SLIP OPINION

Cite as 2014 Ark. App. 577

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-13-1129

KROGER LIMITED PARTNERSHIP I

APPELLANT

V.

JOSEPH L. FEE

APPELLEE

Opinion Delivered October 29, 2014

APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G008938]

AFFIRMED IN PART AND REVERSED IN PART ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL

## JOHN MAUZY PITTMAN, Judge

This is an appeal and cross-appeal from an order of the Arkansas Workers' Compensation Commission. Appellee, Joseph Fee, was employed by appellant, Kroger, when he sustained an admittedly compensable injury. After a hearing on appellee's claim for benefits, the Commission issued a decision finding that all treatment received by appellee through November 15, 2012, was reasonably necessary; that replacement therapy for low testosterone was reasonably necessary to counteract side effects of medicine prescribed for appellee's compensable injury; that appellee proved entitlement to additional temporary-total-disability through December 27, 2011; and that appellee proved that he had sustained a compensable mental injury pursuant to Ark. Code Ann. § 11-9-113 (Repl. 2012).

Appellant Kroger argues that there is no substantial evidence to support the findings that appellee's treatment through November 15, 2012, was reasonably necessary; that the need

SLIP OPINION

for testosterone therapy resulted from the compensable injury; or that appellee had sustained a compensable mental injury. On cross-appeal, appellee argues that there is no substantial evidence to support the Commission's findings that he was not entitled to additional medical treatment after November 15, 2012, or to additional temporary-total-disability benefits after December 27, 2011. We affirm in part and reverse in part on direct appeal, and we affirm on cross-appeal.

In reviewing workers' compensation decisions, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Loar v. Cooper Tire & Rubber Co.*, 2014 Ark. App. 240. Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *White v. Georgia–Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999). The determination of the credibility and weight to be given a witness's testimony is within the sole province of the Commission; the Commission is not required to believe the testimony of any witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Farmers Cooperative v. Biles*, 77 Ark. App. 1, 69 S.W.3d 899 (2002). The Commission has the duty of weighing medical evidence as it does any other evidence, and its resolution of the medical evidence has

SLIP OPINION

the force and effect of a jury verdict.  *Continental Express v. Harris*, 61 Ark. App. 198, 965 S.W.2d 811 (1998).

Appellee, who was forty-two years old at the time of the Commission's 2013 decision, was employed by appellant as a meat cutter in February 2000, and continued in that employment through October 7, 2010.  It was stipulated that, on that date in 2010, appellee tripped and fell while unloading a truck, resulting in injury to many body parts, including his neck and back.  Initial radiology testing of his neck and spine by x-ray and CT scans revealed no fractures or gross abnormalities.  Suffering from low back pain and neck pain with numbness in his right hand, he was initially diagnosed by Dr. Bernard Crowell with cervical and lumbar strain and radiculopathy into the right upper extremity.

Dr. Crowell took appellee off work and ordered physical therapy on October 19, 2010.  After several physical-therapy sessions and pain treatment with hydrocodone, Flexeril, and naproxen, a follow-up visit on November 2, 2010, led Dr. Crowell to conclude that appellee's symptoms remained unchanged and that his pain cycle was unbroken.  Dr. Crowell renewed appellee's prescriptions, kept him off work, and ordered an MRI of his spine.  The MRI was performed on December 2, 2010, by Dr. David Harshfield, Jr., who reported various abnormalities of appellee's cervical and lumbar spine, the most significant being broad-based posterior-disc protrusion of the cervical spine.

Appellee returned to Dr. Crowell for a follow-up examination on January 13, 2011.  Noting that, despite continued physical therapy, appellee was still complaining of neck pain with pain radiating into both arms, with pain, numbness, and tingling into the small finger of

the right hand, Dr. Crowell recorded his impression as "[f]all with lumbar strain, along with broad-based disc herniations at C5–C6 and C6–C7." Dr. Crowell noted that he was attempting to obtain approval for an epidural steroid injection to appellee's cervical spine at C5-C6 and returned appellee to light-duty work with restrictions to begin January 17, 2011.

Appellee returned to light-duty work for approximately six weeks but ultimately was sent home by his supervisor after he complained of numbness and shoulder pain. On January 25, 2011, appellee returned to Dr. Crowell, who gave him a seven-day supply of Ambien, scheduled an epidural steroid injection at C5-C6, and referred him to Dr. Christopher Mocek. On February 15, 2011, Dr. Mocek noted cervical spine pain, low back pain, cervical radiculopathy, lumbar spondylosis, and positive indications for sexual difficulty. Dr. Mocek's treatment plan included administration of HCD, Skelaxin, and Pennsaid, and part-time work with a new weight restriction of ten pounds.

Dr. Crowell took appellee off work on March 10, 2011, and released him to light duty on March 29, 2011, restricted to sitting for four hours per day and occasional lifting up to ten pounds. On April 4, 2011, Kroger notified appellee that duty modifications had been arranged and that he was to return to work in his regular position. Appellee saw an internal medicine specialist, Dr. Daniel Cartaya, for depression on April 7, 2011. Dr. Cartaya diagnosed appellee's condition as a recurrent episode of major depressive disorder with moderate but constant depressive symptoms, secondary to his on-the-job injury and exacerbated by his relationship with his wife. A licensed clinical social worker, David Hendrix, Jr., saw appellee on April 21, 2011, noting that appellee was depressed because he

was being sent back to work, because of money problems related to his injury, and because of demands placed upon him by his wife. Mr. Hendrix diagnosed depressive disorder and recommended regular talk therapy and a psychiatric evaluation for possible medication management.

On April 26, 2011, appellee followed up with Dr. Crowell, who noted that appellee was despondent, had obtained no relief from the epidural steroid injection, and complained of low back pain with pain radiating into the right leg. His impression was cervical radiculopathy and herniated nucleus pulposus of the cervical spine and low back pain. However, electrodiagnostic testing performed on May 4, 2011, revealed no neuropathic or myopathic abnormalities of the upper extremities. Dr. Crowell took appellee off work again on May 24, 2011, noting that he could offer appellee no services other than operative intervention and stating his intention to refer appellee back to Dr. Mocek for a comprehensive plan of care rather than continued injections.

A psychiatric evaluation was performed by Dr. Robin Hickerson on July 13, 2011, who diagnosed "Adjustment Disorder with Depressed Mood and Generalized Anxiety Disorder." Dr. Hickerson noted that appellee had been prescribed Effexor for depression and was suffering sexual side effects from that drug, and she recorded that appellee was unable to work, was in chronic pain, and was very angry with Kroger for perceived unfair treatment.

On July 19, 2011, appellee was examined by Dr. James Adametz, who opined that appellee's MRI scans of the cervical and lumbar spine were essentially normal, that the x-rays of his thoracic spine were normal, and that his nerve-conduction studies were normal. He

stated that, although appellee appears to have "had this take over his life and been incapacitated by it," he did not believe that appellee had sustained a serious injury or required surgery. He recommended a functional capacity evaluation, although he predicted that it would be inconsistent, and opined that it would be reasonable to provide pain management and up to two more epidural steroid injections.

In response to correspondence from Kroger, Dr. Crowell stated his diagnosis as disc herniation at C5–C6 with radiculopathy in the upper extremity with numbness and tingling, along with low back pain. In addition, Dr. Crowell opined that appellee had reached maximum medical improvement on May 24, 2011. Kroger paid temporary-total-disability benefits until August 24, 2011; appellee has not since attempted to return to gainful employment.

Appellee was seen by Dr. Gary Frankowski for a repeat cervical-epidural steroid injection at C5-C6 on September 13, 2011. Dr. Frankowski's notes indicate that appellee had a beneficial response to his last such injection. However, after seeing appellee on October 4, 2011, Dr. Crowell recorded that appellee obtained no relief at all from the second injection.

Dr. Crowell wrote Kroger on October 18, 2011, and stated that his office erred in his earlier opinion that appellee had reached maximum medical improvement, that appellee remained under his care, and that he would notify Kroger when appellee reached maximum medical improvement. On November 11, 2011, appellee participated in a functional capacity evaluation; the report stated that, although appellee demonstrated that he was at least capable

of sedentary work, his true functional level could not be determined because he gave unreliable effort during the evaluation.

On November 17, 2011, Dr. Crowell noted that, because appellant was not a surgical candidate, he was being referred to Dr. Columbus Brown for pain management. In a letter to Kroger dated December 6, 2011, Dr. Crowell stated that, although appellee had probably reached maximum medical improvement, he would like Kroger to refer appellee to a comprehensive pain-management physician before stating categorically that appellee had in fact reached maximum medical improvement. After seeing appellee on December 15, however, Dr. Crowell noted that, because appellee was still complaining of neck and low back pain despite physical therapy and several epidural steroid injections, he intended to schedule surgery in the near future to perform an anterior-cervical discectomy with interbody fusion at C5–C6.

On December 27, 2011, Dr. Adametz opined that appellee had reached maximum medical improvement and qualified for a six-percent permanent-partial impairment to the body as a whole. On February 2, 2012, Dr. Crowell signed a note stating that appellee was still under his care until further notice. On March 7, 2012, appellee was seen in Dr. Cartaya's office complaining of panic attacks.

On April 3, 2012, the Commission approved a change of physician from Dr. Crowell to Dr. Mocek, who assessed appellee as suffering from cervical-spine pain, right upper-extremity radiculitis, and low back pain. Dr. Mocek recommended additional diagnostic testing. On May 17, 2012, Dr. Mocek reported that appellee complained that his pain

medication was interfering with his sex life.  On June 12, 2012, Dr. Mocek noted that appellee had benefitted  from a change in medication from Effexor to Wellbutrin, and had a low testosterone level.  Stating that the low testosterone was related to appellee's taking opioid medication for his neck, Dr. Mocek ordered monthly testosterone injections to be followed by repeat testosterone-level checks two weeks after each injection.

A psychiatric evaluation of appellee was provided by Dr. Purushottam Thapa on July 5, 2012.  She noted that appellee had been dealing with depression and anxiety since 2008, but that appellee stated that his current problem started with the work-related injury that he sustained on October 7, 2010.  Dr. Thapa diagnosed "Major Depressive Disorder and Anxiety Disorder," for which she prescribed Paroxetine and Clonazepam.  Noting on August 9, 2012, that the Paroxetine was causing appellee sexual dysfunction, Dr. Thapa withdrew appellee from that medication and increased his dosage of Wellbutrin.

Dr. Mocek performed a diagnostic cervical medial-branch nerve block (MBNB) on September 12, 2012; he noted that he intended to repeat the procedure in one month and that, if appellee reported eighty-percent or more relief from the injections, appellee would be a candidate for radio-frequency ablation of the facet-joint nerves to provide prolonged pain relief.  After a follow-up appointment on October 16, 2012, Dr. Mocek noted that appellee reported experiencing 100% relief for three to four hours after the cervical MBNB performed on September 12.  Based on this result, Dr. Mocek recommended radio-frequency ablation, but this was not performed because appellant controverted any further medical treatment, testing, or medication as of October 1, 2012.  On November 14, 2012, Dr. Cartaya wrote

that he believed that the procedure proposed by Dr. Mocek was the correct way to proceed. Appellee was last seen by Dr. Mocek on November 15, 2012. Dr. Mocek noted increased cervical and lumbar pain and radiculitis; increased appellee's hydrocodone dosage; recommended a testosterone injection; and refilled appellee's medications.

Appellant argues that the Commission erred in finding that the medical treatments provided through November 15, 2012, were reasonably necessary for treatment of appellee's compensable injury. Although couched in terms of the sufficiency of the evidence, this argument is premised on the assertion that the only credible medical opinion was that of Dr. Adametz, who recommended no further treatment after the cervical-epidural steroid injection administered by Dr. Frankowski on September 13, 2011. However, the question of the credibility of medical opinions is within the sole province of the Commission; Arkansas appellate courts have consistently and repeatedly held that, when the Commission chooses to accept the opinion of one physician over that of another, the appellate court is powerless to reverse the decision. *E.g.*, *Nettleton School District v. Adams*, 2010 Ark. App. 3.

Nor do we agree that substantial evidence is lacking to support the Commission's finding that replacement therapy for low testosterone was reasonably necessary to counteract side-effects of medicine prescribed for appellee's compensable injury. Appellant argues that Dr. Mocek's opinion that opioid medications administered to relieve appellee's pain from his compensable injury caused a drop in his testosterone level was not stated to a reasonable degree of medical certainty because it lacked the requisite degree of definiteness. *See Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000). We do not agree. Although it is

true, as appellant notes, that Dr. Mocek wrote on August 16, 2012, that it was well known that chronic use of opioids for chronic pain "can" cause a reduction in a man's testosterone production, this statement is taken out of context. A fair reading of the entire medical note shows that Dr. Mocek's comment was directed not to the reason for the need for testosterone therapy, but instead to his frustration with Kroger for having denied coverage for this therapy despite the fact that the causal connection between chronic opioid use and low testosterone was well established. In any event, Dr. Mocek definitively stated his opinion regarding causation in his report of June 12, 2012, where he wrote, "The low testosterone is related to taking opioid medication for his neck."

We agree, however, with appellant's argument that substantial evidence is lacking to support the Commission's finding of a compensable mental injury. The Commission based its award of compensation for psychological and psychiatric costs on Ark. Code Ann. § 11-9-113 (Repl. 2012), which requires proof that the mental injury was caused by physical injury to the body. In *Amlease, Inc. v. Kuligowski*, 59 Ark. App. 261, 957 S.W.2d 715 (1997), the issue was whether the claimant's post-traumatic stress disorder was properly found to have been caused by physical injuries that he sustained in a compensable vehicular accident. We held that it was not caused by claimant's physical injuries because the claimant admitted that his mental anguish stemmed not from his own injuries but instead from the death of the other driver involved in the accident. In *Terrell v. Arkansas Trucking Service, Inc.*, 60 Ark. App. 93, 959 S.W.2d 70 (1998), the claimant was involved in an accident in which his truck overturned on a bridge embankment, and he subsequently suffered mental distress and was

afraid to drive his truck again.  The issue was whether the Commission erred in denying his request for a psychological examination.  We held that it did so err because such an exam was necessary for him to prove his claim of mental injury:

> There is no question that appellant sustained physical injuries in the compensable accident. Whether the physical injuries have caused appellant's mental distress must be answered by psychological evaluation by a licensed psychiatrist or psychologist. The results of the evaluation should make it clear whether appellant's distress is the result of his physical injuries or the accident itself. For appellant's mental injury to be compensable it must have a causal connection to his physical injuries. As the statute is written, mental injury or illness under this section is not compensable unless it is caused by the physical injuries.

*Terrell*, 60 Ark. App. at 96, 959 S.W.2d at 72.

Here, there was no medical opinion offered to show that appellee's mental condition was caused by his physical injury.  Although medical evidence on the issue of causation is not required in every case, *see*, *e.g.*, *Wal-Mart Stores, Inc. v. VanWagner,* 337 Ark. 443, 990 S.W.2d 522 (1999)*; Cooper Tire & Rubber Co. v. Strickland,* 2011 Ark. App. 585*; Wal-Mart Stores, Inc. v. Leach*, 74 Ark. App. 231, 48 S.W.3d 540 (2001), we think that such evidence was necessary in this case because appellant's depressive and anxiety disorders were recurrences of conditions that dated to at least 2008, two years prior to his compensable injury.  In the absence of any medical opinion regarding the cause of appellee's mental distress, or evidence to show that the distress he experienced after his injury was different in degree than that experienced before the injury, we hold that there is no substantial evidence to support the Commission's finding of a compensable mental injury under Ark. Code Ann. § 11-9-113.  We express no opinion as to whether appellee's psychiatric treatment could have been found to be compensable under § 11-9-508.

On cross-appeal, appellee argues that the Commission erred in finding that he was not entitled to additional medical treatment after November 15, 2012. We find no error. Medical opinion differed widely over the utility of further medical treatment, and the Commission chose to believe the opinion of Dr. Adametz on this point; this is a question of the weight of the evidence, not its sufficiency. *See Nettleton School District v. Adams*, *supra*.

Appellee also argues that the Commission erred in finding that he proved entitlement to temporary-total disability only to December 27, 2011. Temporary-total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages; the healing period continues until the employee is as far restored as the permanent character of his injury will permit, and it ends when the underlying condition causing the disability has become stable and nothing in the way of treatment will improve that condition. *Carroll General Hospital v. Green*, 54 Ark. App. 102, 923 S.W.2d 878 (1996). Determining when the healing period ends is a fact question for the Commission. *Id.* Although there was opinion offered to the contrary, here the Commission's finding as to the end of the healing period was based on Dr. Adametz's express opinion that appellee had reached maximum medical improvement as of that date. This, too, is a matter of credibility into which we may not intrude. *See id.*

Affirmed in part and reversed in part on direct appeal; affirmed on cross-appeal.

GLADWIN, C.J., and WYNNE, J., agree.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Gail Ponder Gaines*, for appellant.

*The McNeely Law Firm, PLLC*, by: *Steven R. McNeely*, for appellee.