SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–16–658

| | |
|---|---|
| | Opinion Delivered February 1, 2017 |
| GRAYLON COOPER<br><br>APPELLANT<br><br>V.<br><br>UNIVERSITY OF ARKANSAS FOR MEDICAL SCIENCES, PUBLIC EMPLOYEE CLAIMS DIVISION, AND DEATH & PERMANENT TOTAL DISABILITY TRUST FUND<br>APPELLEES | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G103997]<br><br><br><br><br><br><br>AFFIRMED |

## BRANDON J. HARRISON, Judge

Graylon Cooper appeals the decision of the Arkansas Workers' Compensation Commission (the Commission), which found that he did not prove that he was permanently and totally disabled but awarded him a 23 percent wage-loss disability. He argues that the Commission's decision is not supported by substantial evidence. We affirm.

Cooper, a surgical technician at UAMS, injured his back while transferring a patient from the operating table to a stretcher in May 2011. UAMS accepted the injury as compensable and paid for medical and indemnity benefits. Cooper underwent an anterior cervical discectomy and fusions at C5-6 and C6-7 in August 2012 and was released with an

SLIP OPINION

11 percent impairment rating. UAMS accepted and paid permanent partial–disability benefits based on the 11 percent impairment rating.

In September 2015, an administrative law judge (ALJ) held a hearing to determine Cooper's entitlement to permanent total disability or, in the alternative, a wage-loss disability in excess of 11 percent. At the hearing, Cooper testified that he had a bachelor's degree in pre-med zoology, an associate's degree in surgical technology, and had attended one year of medical school. He testified that since his surgery, he still has pain and blood pressure issues. He said that on an ordinary day his pain level is a nine on a scale from one to ten. He explained that he is on a number of medications that make him drowsy, affect his memory and his ability to concentrate, and render him unable to drive. He testified that he did nothing most days except watch television. He did admit, however, that he had been able to take a seven-hour round trip to Mississippi and had traveled to Louisiana and played slot machines for about an hour.

Cooper said that he would prefer to be working but that he cannot work for more than an hour at a time. He agreed that he could perform a job where all he had to do was sit and answer the phone but then said he could not hold conversations with people because of his medications. He said that he underwent a functional capacity evaluation (FCE) in July 2015 after having to cancel two previous FCEs due to his high blood pressure. He stated that he was "educated to do a lot of jobs" and insisted that he would "love" to go back to work.

Cooper's wife, Narvelia, testified that Cooper had been energetic and active before his injury but is completely inactive now. She testified that if he could work, he would,

and that he had expressed a desire to go back to work. She also said that he has ongoing problems with pain and that his medication affected his ability to communicate and stay awake.

Heather Taylor, an educational rehabilitation counselor, testified that she met with Cooper in June 2015; however, she did not conduct any job search for him at that time because "he had resigned himself to not going back to work in the future and didn't have any plans to look for a job in the future." She completed a vocational-rehabilitation evaluation report based on Cooper's educational and work-history background but did not have an FCE to assist her.

She spoke to Cooper again in August 2015 on the telephone and attempted to set up a meeting with him, but Cooper placed her on hold and never came back to the phone. According to Taylor, she called back a couple of times and never got an answer; she also sent a follow-up letter but never received a response. Taylor prepared another report on August 26 and noted his failure to communicate with her. She also noted that his FCE indicated that he can perform sedentary work but cannot work an eight-hour shift. She concluded that Cooper had an excellent work history and educational background and had acquired a strong skill set but that "there may be an issue with his medications possibly causing him to be not fully coherent." Taylor testified that she had not performed any labor-market research taking into account the limitations revealed by the FCE but opined that "his options will be extremely limited."

In addition to reviewing the above testimony in his written order, the ALJ also reviewed the medical evidence presented at the hearing. Dr. Zachary Mason, who

performed Cooper's surgery, opined in October 2012 that Cooper could return to work and assessed his impairment rating at 11 percent to the body as a whole. A 2013 neurology report signed by Dr. Bradley Boop noted that "nerve conduction studies and EMG recordings in the right upper extremity are unremarkable. There is no evidence of an underlying radiculopathy and there are no myopathic changes."

In January 2014, Dr. Jay Holland, Cooper's general physician, opined that Cooper had been "rendered disabled due to cervical disc diseases, cervical nerve pain post injury and right arm hemiplegia." He also stated that any belief that Cooper would rather bankrupt his family than work is "completely wrong." Also in January 2014, Dr. Carl Covey, a pain-management physician, stated that Cooper's "pain level is sufficient enough that it is my recommendation that he does not work at this time." In December 2014, Covey opined that Cooper "could foreseeably attempt to return to some sort of employment but his prospects are dim as he continues to complain of significant pain and requires medication for the pain that could certainly impair both his physical and mental functioning." Covey declined to comment on any change of impairment but recommended Dr. Kevin Collins to make such an assessment.

In April 2015, Dr. Collins examined Cooper to determine whether there was any change in the previously assigned permanent-partial impairment rating of 11 percent. Collins reviewed a 2013 MRI and noted that Cooper now has a disc protrusion at C4-5, which is not unusual for patients who have undergone a fusion. Collins opined that Cooper's percentage of impairment "certainly should go up as it relates to his circumstance" and assessed a 25 percent whole-person impairment.

SLIP OPINION

In May 2015, the claim adjuster for the public-employee claims division requested a

revew of Dr. Collins's report, and Dr. Bruce Randolph performed that review.  Randolph

reviewed Cooper's medical records, including Dr. Collins's findings, and concluded that

Cooper had an 11 percent whole-person impairment.  Cooper's FCE, which was

administered in July 2015, noted that Cooper put forth consistent effort and concluded that

> although Mr. Cooper demonstrated the ability to perform material handling within the SEDENTARY classification of work, he did require multiple rest breaks while [lying] down during this evaluation. He did not demonstrate the ability to work an 8 hour workday at this time, even at the Sedentary work level.

With regard to medical evidence established by objective findings, the ALJ noted

that Cooper's nerve-conduction studies and EMG recordings in the right upper extremity

were "unremarkable and there is no evidence of an underlying radiculopathy and there are

no myopathic changes."  The ALJ also noted that Cooper had received an anatomical

impairment rating of 11 percent from two physicians and that Dr. Collins's higher rating of

25 percent had been withdrawn prior to the hearing "due to issues in regard to the method

used to reach its determination."  The ALJ concluded

> In considering factors that could affect the claimant's future earning capacity and in reviewing the testimony and reports that were filed of record, I find that claimant's motivation to return to work vacillates at times. Mr. Cooper has made statements that he wants to return to work to pay bills and to take care of his family and then has also made statements that he will never will [sic] be able to return to work. Mr. Cooper admitted that he has spent as long as seven hours in a car traveling during a day and has been able to play slot machines at least on one occasion since the accident.

> Based on the above, I find that Mr. Cooper has failed to show by a preponderance of the evidence that he is permanently and totally disabled, but has proven by a preponderance of the evidence that he is entitled to wage loss disability rating of 23% along with statutory attorney fees.

SLIP OPINION

UAMS appealed to the Commission, and Cooper cross-appealed. In an opinion dated 18 May 2016, the Commission, in a 2–1 majority opinion, affirmed and adopted the ALJ's opinion as its own. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id*. Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id*.

Cooper now appeals the Commission's decision, and while UAMS filed a cross-appeal, it has not developed any argument on appeal challenging the 23 percent wage-loss award other than a conclusory statement that "the award of 23% wage loss disability is excessive in this case." Therefore, we consider the cross-appeal abandoned.

It is the Commission's duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008). We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Parker v. Atl. Research Corp.*, 87 Ark. App. 145, 189 S.W.3d 449 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission: if so, the appellate court must affirm. *Parker v. Comcast Cable Corp.*, 100 Ark. App. 400, 269 S.W.3d 391 (2007).

SLIP OPINION

Pursuant to Arkansas Code Annotated section 11-9-522(b)(1) (Repl. 2012), when a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating based on wage-loss factors. *Redd v. Blytheville Sch. Dist. No. 5*, 2014 Ark. App. 575, 446 S.W.3d 643. The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Lee v. Alcoa Extrusion, Inc.*, 89 Ark. App. 228, 201 S.W.3d 449 (2005). The Commission is charged with the duty of determining disability based on a consideration of medical evidence and other factors affecting wage loss, such as the claimant's age, education, and work experience. *Redd*, *supra*. Motivation, postinjury income, credibility, demeanor, and a multitude of other factors are matters to be considered in claims for wage-loss-disability benefits in excess of permanent-physical impairment. *Id.*

Permanent total disability is defined by statute as the inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment. Ark. Code Ann. § 11-9-519(e)(1) (Repl. 2012). The employee bears the burden of proving the inability to earn any meaningful wage. Ark. Code Ann. § 11-9-519(e)(2).

I.    *Permanent and Total Disability*

For his first point, Cooper argues that the finding that he is not permanently and totally disabled is not supported by substantial evidence. He denies that spending a total of seven hours in a car during one day or playing slot machines for one hour shows that he has the ability to return to some type of work. He reviews the medical evidence, including Dr. Holland's diagnosis in March 2013 that Cooper had a cervical nerve-root injury, muscle

wasting, and neuropathy of the right upper extremity that was "not fixable and will not heal." Cooper also cites the results of the FCE, which he says "revealed that he is unemployable." He insists that the totality of the evidence shows that he is permanently and totally disabled and cites *Whitlatch v. Southland Land & Development*, 84 Ark. App. 399, 141 S.W.3d 916 (2004), in support.

*Whitlatch* presents a similar situation in that the claimant argued that he was "totally and permanently disabled as a result of the combination of the severe pain he suffers from in his back and legs along with the severe side effects he suffers associated with the narcotics medication he takes daily." *Id.* at 406, 141 S.W.3d at 921. The Commission found that Whitlatch was not totally and permanently disabled but was entitled to a 50 percent wage-loss disability. This court reversed, however, holding

> In short, when taking into consideration appellant's limited education, manual-labor employment skills, severe pain in his back and legs, coupled with the side effects of necessary prescription pain medication, in addition to the testimony of his doctors and vocational expert, we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission, finding that appellant was anything less than permanently and totally disabled.

*Id.*, 141 S.W.3d at 921.

Cooper argues that *Whitlatch* is on all fours with his case and denies that *Whitlatch* is distinguishable based on the limited education status of the claimant in that case. Cooper contends that the Commission "never even considered [his] mental condition when it rendered its opinion regarding his residual **physical** capacity to return to part-time, sedentary work which only theoretically exists." (Emphasis in original.) He claims that had

the Commission properly considered the effect of his pain and his medications, it could not have reasonably reached any conclusion other than permanent and total disability.

In response, UAMS asserts that Cooper is highly educated, skilled, and, by his own admission, qualified to teach. However, Cooper has not pursued any job, either full time or part time, nor did he participate in the vocational rehabilitation offered to him. UAMS also contends that Cooper's "credibility about his pain and his limitations is in question since he claims that he must sit in his chair all day because he is in pain, but admits that he can travel to Louisiana to stay at a casino and play slots." UAMS argues that Cooper's true employment potential is not known due to his lack of effort in looking for work, and that considering his motivation, credibility, and demeanor, the Commission did not err in finding that Cooper failed to prove entitlement to permanent total disability.

As to *Whitlatch*, UAMS asserts that the case supports the finding that Cooper is *not* permanently and totally disabled, because Cooper is far more educated and has more transferrable skills than Whitlatch. UAMS argues that *Frost v. City of Rogers*, 2016 Ark. App. 273, is more on point. In *Frost*, the claimant sustained a compensable back injury and underwent a lumbar fusion and pain management with narcotic medication. Frost sought permanent total-disability benefits, but the Commission awarded permanent partial-disability benefits of 20 percent. In affirming, this court noted the Commission's findings that Frost was assigned only 10 percent impairment rating for his injury, has a tenth grade education and can read, and had not looked for any job beyond the ones identified by a vocational counselor. We held that these facts provided a substantial basis for the Commission's decision.

UAMS argues that Frost and Cooper are similar in age, both underwent spinal fusion and used narcotic pain medication, and both have not made an effort to return to work. Additionally, Cooper is more educated than Frost. According to UAMS, these facts support the Commission's conclusion that Cooper is not permanently and totally disabled.

It is the Commission's duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence, *see Martin Charcoal, Inc.*, *supra*, and we will not second-guess that determination. As stated previously, the issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. *Parker*, *supra*. Viewing the Commission's decision in the light most favorable to its findings, we hold that reasonable minds could reach the result found by the Commission; accordingly, we affirm.

## II.     *Wage-loss Disability*

On this point, Cooper claims that because the Commission awarded him only 23 percent wage loss, it concluded that he had retained 66 percent of his ability to earn wages. And based on his average weekly wage, this means the Commission thinks that he should be able to earn $813.12 per week. Because it is clear that he cannot work full time, he would have to find a part-time, sedentary job that pays $40.66 per hour to earn that amount per week. Cooper concludes that the absurdity of this scenario is proof that the assessment of a 23 percent wage loss is not supported by substantial evidence and should be reversed.

SLIP OPINION

In response, UAMS again argues that Cooper is unmotivated to return to work and "is content sitting at home in his recliner watching television and taking all of his medications." Therefore, it asserts, Cooper is not entitled to any greater amount of wage-loss disability benefits than the 23 percent awarded. UAMS also disputes Cooper's argument above based on earning potential and notes that the Commission made no finding that Cooper is able to earn 66 percent of his wages.

Again, based on our standard of review, and viewing the Commission's decision in the light most favorable to its findings, we hold that the Commission's award of 23 percent wage-loss disability is supported by substantial evidence.

Affirmed.

KLAPPENBACH and WHITEAKER, JJ., agree.

*M. Keith Wren*, for appellant.

*Charles H. McLemore Jr.*, for appellee.