DAVID M. GLOVER, Judge
Kenneth Vann sustained a compensable injury on November 30, 2015, while employed by FedEx Freight, Inc. (FedEx). He had been employed by FedEx since 1997 and was approximately fifty-seven years old when the injury occurred. The administrative law judge (ALJ) found: Vann proved he had sustained a permanent physical impairment in the amount of 20 percent to his body as a whole; and Vann did not sustain his burden of proving permanent total disability (PTD), but did prove he was entitled to 70 percent wage-loss disability in addition to his anatomical loss. The ALJ also awarded Vann's counsel maximum attorney fees pursuant to Arkansas Code Annotated section 11-9-715 (Repl. 2012). FedEx appealed the decision to the full Workers' Compensation Commission.
The Commission affirmed the ALJ's finding that Vann failed to prove PTD; reduced Vann's permanent physical-impairment rating from 20 percent to 5 percent; and reduced Vann's wage-loss award from 70 percent to 20 percent. The Commission's opinion said nothing about attorney fees. This appeal followed. Vann contends: 1) the Commission's decisions that his impairment rating is only 5 percent and his wage loss only 20 percent are not supported by substantial evidence and must be reversed, and 2) the Commission's failure to award him attorney fees is error. FedEx did not cross-appeal. We affirm the Commission's permanent physical-impairment and wage-loss ratings, and we remand to the Commission for a determination of attorney fees.
*435 In reviewing workers'-compensation decisions, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. Kroger Ltd. P'ship I v. Fee , 2014 Ark. App. 577, 446 S.W.3d 628. Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. Id. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions made by the Commission. Id. It is within the Commission's sole province to determine credibility and the weight to be given a witness's testimony. Id. The Commission is not required to believe the testimony of any witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. Id. The Commission has the duty of weighing medical evidence as it does any other evidence, and its resolution of the medical evidence has the force and effect of a jury verdict. Id. The issue is not whether we might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission, in which case we must affirm. Cooper v. University of Ark. for Med. Scis. , 2017 Ark. App. 58, 510 S.W.3d 304.
At the hearing before the ALJ, Vann testified he was born in 1958, graduated from high school, obtained a two-year degree in nuclear engineering with Isomedix through Mississippi State, and worked for Isomedix for fourteen years. Before starting his job at FedEx, Vann owned a liquor store and a fence company. He began working at FedEx on January 9, 1997, as an over-the-road truck driver. On November 30, 2015, Vann slipped when he got to the driver's side of his truck at the start of a shift and was unconscious for 40 to 45 minutes. It is this fall that serves as the basis for his workers'-compensation claims.
Vann testified he was fine before the accident but is afraid to try to drive now because he cannot feel his feet; he can walk about 200 feet with a walker or cane before he wears out; and his lower back really bothers him and is numb from midway down to his tailbone. He explained he had just passed his Department of Transportation physical exam four months before the accident, and two weeks before to the accident he had seen his personal doctor for a physical exam.
Vann described his symptoms following the accident to include numbness in his arms and hands, lower back, and lower extremities; incontinence; and headaches. He testified he had driven for FedEx for nineteen years and had none of those symptoms before the accident. Vann acknowledged a motorcycle accident twenty-three years ago that fractured his skull. He also testified he had gained about thirty pounds since the accident and was again required to take Metformin, a diabetes medication that he had been able to discontinue earlier because he had lost a significant amount of weight. On cross-examination, Vann explained that he had also hurt his neck and his tailbone as a result of the FedEx fall. He also stated that, despite Dr. Parsioon's report of not being able to objectively find anything to explain Vann's complaints regarding his brain and cervical spine, Dr. Parsioon had told him his neck was twisted in a way that pushed against his spinal cord. When asked about reports that linked the numbness in his extremities to carpal-tunnel syndrome and "some other neuropathy," he stated he found it strange he was walking fine before the accident and "could feel everything."
*436 Vann testified he could not stand or sit for long periods of time, and he could maybe answer a phone but would have trouble writing notes because of the numbness in his hands. He described his condition as depressing.
Alice Vann testified she and Kenneth had been married twenty-six years, and she had known him for fifteen years prior to their marriage. She said his health condition was perfectly fine before the fall in November 2015. Alice said at first they thought it was just a "neck thing" and a concussion that might take a few weeks to recover, but as time went on, he was not recovering. She stated he has not been able to walk without a cane since the day of the fall; he was very shaky and had a lot of lower-back and leg pain; he could not sleep at night; and he had a lot of numbness from his elbows down and his knees down. She testified his muscles began to atrophy to the point he had trouble pulling up on his walker, but that physical and occupational therapy had helped him. Alice said nerve blocks had helped his lower-back and tailbone pain, but workers' compensation had stopped paying for it and other medical services, and without the nerve blocks, he was in constant pain. She indicated he takes Advil for his headaches and muscle relaxers at night for his leg pain so he can sleep.
Alice testified she thought he could do phone work if he could stand up and sit down; he could not write because he cannot feel his fingers most of the time, and he cannot drive.
Medical records from the doctors who treated Vann following the accident were submitted as exhibits. Those doctors included Dr. Alan Nadel, a neurologist; Dr. Alan Alabaster, a urologist; Dr. Fereidoon Parsioon, a neurosurgeon; Dr. Robert Jones, an orthopedic surgeon; and Dr. Alan Kraus, a pain-management doctor. For purposes of this appeal, the medical records can be briefly summarized. Dr. Nadel determined Vann reached maximum medical improvement by November 7, 2016, and Dr. Nadel was the only physician who thought Vann suffered a traumatic cervical-cord injury that was interconnected with his other ailments. The MRIs and other doctors' opinions indicated only degenerative cervical conditions, with no evidence of acute injury.
The Commission's opinion provided in part:
Upon review of the claimant's medical records, to include the results of objective diagnostic studies and the opinions of several physicians, and considering the claimant's persisting back symptoms for which he continues in pain management, we find that the claimant has sustained some degree of permanent physical impairment as a result of his November 2015 lumbar injury. Rather than the twenty percent (20%) permanent physical impairment rating assessed by the Administrative Law Judge, however, by utilizing Table 75 (II)(B) on page 3/113 of the 4th Edition of the Guides, the Full Commission finds that the claimant has sustained five percent (5%) permanent physical impairment as a result of his compensable injury.
(Emphasis added.)
As his major point of appeal, Vann contends the Commission's decisions that his impairment rating is only 5 percent and his permanent partial-disability wage-loss rating is only 20 percent are not supported by substantial evidence and must be reversed. The gist of Vann's argument under the impairment-rating portion of this point is that the Commission's analysis of Vann's condition was one involving the cervical and thoracic spine, not the lumbar spine; yet the Commission "applied a portion *437 of Table 75 which addresses only a lumbar issue, not cervical or thoracic." He further contends "[i]f this Court accepts the Full Commission's suggestion that the Claimant suffers from a cervicothoracic spine impairment, as it so found , then Table 73 is the table which would apply" (emphasis added), and it would require a finding of 25 percent impairment rating to the body as a whole. We disagree.
The major problem with Vann's argument is that the Commission did not find he suffers from a cervicothoracic-spine impairment. In fact, the Commission was careful to reject Dr. Nadel's findings in that regard. Instead, the Commission concluded Vann suffered a lumbar injury that caused his permanent physical impairment: "[W]e find that the claimant has sustained some degree of permanent physical impairment as a result of his November 2015 lumbar injury. "
As mentioned previously, the Commission has the duty of weighing medical evidence as it does any other evidence, and its resolution of the medical evidence has the force and effect of a jury verdict. Kroger, supra. Here, the Commission did not accept Dr. Nadel's opinion. The gist of the medical evidence demonstrated that Dr. Nadel was the only physician who persisted in thinking Vann suffered a traumatic cervical-cord injury, which was interconnected with the other ailments. The MRIs and other doctors' opinions indicated only degenerative cervical conditions, with no evidence of acute injury. Fair-minded persons with the same facts before them could have reached the conclusions made by the Commission. Consequently, the Commission's use of the portion of Table 75 that addresses lumbar issues, rather than the table that addresses cervical issues, was appropriate. Vann has established no basis for reversal of the Commission's determination that he suffered a 5-percent physical impairment as a result of his compensable injury.
With respect to the Commission's reduction of Vann's wage-loss rating from 70 percent to 20 percent, we conclude substantial evidence supports that decision as well. When a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating based on wage-loss factors. Cooper , 2017 Ark. App. 58, 510 S.W.3d 304. The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. Id. The Commission is charged with the duty of determining disability based on a consideration of medical evidence and other factors affecting wage loss, such as the claimant's age, education, and work experience. Id. Motivation, postinjury income, credibility, demeanor, and a multitude of other factors are matters to be considered in claims for wage-loss disability benefits in excess of permanent-physical impairment. Id.
In reaching its 20 percent wage-loss decision based on the compensable lumbar injury, the Commission considered the same factors it used to assess whether he was left permanently and totally disabled as a result of his injury, including Vann's work and educational history. With respect to that referenced determination, the Commission explained:
Although the claimant's treating neurologist, Dr. Nadel, opined that he is unable to return to his former duties as a truck driver, both the claimant and his wife testified that there are some jobs to which he could return. Finally, the claimant currently receives social security benefits, and he has failed to even attempt to return to work due, in part, to other, unrelated physical conditions such as carpal tunnel syndrome.
*438 Based on the above and foregoing, the claimant has failed to prove by a preponderance of the evidence that his November 20, 2015, compensable injury rendered him unable to earn any meaningful wages in the same or another profession. Rather, the weight of the evidence in this claim demonstrates that the claimant currently lacks the willingness to return to work, partly because of other disabling conditions from which he also suffers. Therefore, we find that the claimant has failed to prove that he is entitled to permanent and total disability benefits as a result of his compensable injury.
As mentioned previously, it is within the Commission's sole province to determine credibility and the weight to be given a witness's testimony, and the Commission is not required to believe the testimony of any witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. Kroger, supra. The Commission concluded Vann lacked the willingness, or motivation, to return to work, and he failed to prove his compensable lumbar injury rendered him unable to earn any meaningful wages in the same or another profession. Fair-minded persons with the same facts before them could reach the Commission's conclusions.
For his final point of appeal, Vann contends the Commission erred in failing to award attorney fees because even though the ALJ's award in his favor was modified, it was still affirmed, entitling his counsel to an award of attorney fees. We remand this issue to the Commission.
The ALJ awarded Vann's attorney the maximum attorney fee pursuant to Arkansas Code Annotated section 11-9-715 (Repl. 2012) on the controverted indemnity benefits awarded by the ALJ. The Commission's decision did not mention the attorney-fee award. We therefore remand this issue to the Commission for a determination.
Affirmed in part; remanded in part.
Gladwin and Whiteaker, JJ., agree.