Cite as 2023 Ark. App. 282

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CV-22-413

| | |
|---|---|
| JUDY MELTON | **Opinion Delivered** May 17, 2023 |
| APPELLANT/CROSS-APPELLEE | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| V. | [NO. G107174] |
| CLARKSVILLE SCHOOL DISTRICT; ARKANSAS SCHOOL BOARDS ASSOCIATION; AND DEATH AND PERMANENT TOTAL DISABILITY TRUST FUND | AFFIRMED ON DIRECT APPEAL AND ON CROSS-APPEAL |
| APPELLEES/CROSS-APPELLANTS | |

## BRANDON J. HARRISON, Chief Judge

This is an appeal and cross-appeal from a decision by the Arkansas Workers' Compensation Commission to award Judy Melton permanent disability benefits for a four percent impairment to her cervical spine ("neck") and five percent wage-loss disability. Judy contends the Commission should have credited her treating orthopedist's opinion that she suffered an eight percent neck impairment, nine percent to her lumbar spine ("back"), and five percent for brain injury. Clarksville School District, her employer, accepts the four-percent neck impairment, but opposes everything else, including the wage-loss award.[1] We affirm on direct appeal and cross-appeal.

---

[1]The other appellees joined in the District's notice of cross-appeal to this court. Only the District filed a brief here.

Judy taught first grade. In August 2011, aged 57, she fell on a wet ramp as she was helping students to the bus. She suffered injuries to her head, neck, and back.

The proceedings in the Commission that remain relevant here were as follows. The District accepted that the injuries we mentioned were compensable, meaning they entitled Judy to some workers'-compensation benefits—"such medical services as may be reasonably necessary in connection with the injury," for example. Ark. Code Ann. § 11-9-508(a) (Repl. 2012). But when Judy sought permanent impairment ratings and wage loss–disability at a March 2021 hearing, the District contended that she was seeking compensation for issues that either did not affect her ability to work or were due to preexisting and underlying conditions.

After hearing testimony from Judy and reviewing the medical evidence (which we will discuss in a moment), the ALJ found she had suffered a five percent whole-body impairment for head injury and a four percent impairment for neck injury. It found she did not prove a back impairment or entitlement to wage loss.

Judy appealed, and the District cross-appealed, to the Full Commission. The Full Commission made the award first mentioned above.

We have carefully reviewed the evidence in the Commission record, using the required standard of review, which essentially requires that we defer to the Commission's credibility calls, if any, as we determine whether a fair-minded person could derive the Commission's conclusion on the record presented. *E.g.*, *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, at 12–13, 431 S.W.3d 858, 867. Speaking more plainly, weighing and resolving conflicts in the evidence is the Commission's task. Ours is to make a neutral and

serious "gut check," viewing the record in the light most favorable to what the Commission did: Could fair-minded persons have done it?

On this record, fair-minded persons could have reached other decisions (as the ALJ did in an opinion the Full Commission did not adopt); but they could also reach this one. We address the impairment findings first.

## I. *Permanent Partial Disability*

To demonstrate entitlement to permanent partial disability, Judy's burden was to prove that a compensable injury resulted in a permanent physical impairment supported by objective and measurable physical findings. Ark. Code Ann. § 11-9-704(c)(l)(B) (Repl. 2012). Judy was also required to prove the compensable injury was the "major cause" (i.e. more than 50 percent of the cause) of the permanent impairment. Ark. Code Ann. § 11-9-102(4)(F)(ii)(a) (Repl. 2012). That was not a simple analysis in the circumstances. Medical records documented issues before the fall in all three injured areas. A right-knee problem, and related complications, entered the picture soon after and never left.

It seems to be undisputed that by 2017, Judy could no longer perform her duties as a first-grade teacher. She had to ask other teachers or janitors for help with physical tasks she had formerly done on her own. She could no longer get down on the floor with her students. And she had missed work.

She testified that between her August 2011 fall and the following Christmas, she missed twenty school days because of her back and migraine headaches. She still has those headaches, and they interfere with her ability to think and function. She attributes them to a brain injury from the 2011 fall.

3

The Commission disagreed. It placed significant evidentiary weight on a report from a neuropsychological evaluation in January 2012 that "[t]he overall pattern of the neuropsychological evaluation is not compatible with a traumatic brain injury." A CT scan of Judy's brain days after the fall, and another in November 2012, were normal. A brain MRI from December 2011 showed findings that were consistent with diffuse axonal injury (that is, a concussion), but also consistent with migraines. The Commission quoted correspondence from a treating physician that indicated Judy had a history of migraines before the fall:

> Mrs. Melton is a patient that I have followed for a number of years for chronic intractable migraines. She had a long history of migraines which exacerbated after concussion. She has had some mild attention and concentration focusing issues which was felt to be related to the concussion but also related to medication as well as her migraines. She has been stable as far as her migraines are concerned has had no worsening in her other symptoms. At this time from the standpoint of her migraines as well as cognitive impairment there are no limitations as far as her ability to work.

That recitation is enough to affirm the Commission's finding that Judy did not suffer a permanent brain impairment given the standard of review.

Next, the neck impairment. The Commission's award of a four percent whole-body impairment to the neck was based on a rating by Stuart Jones, a physical therapist, after an evaluation revealed muscle spasms in Judy's left lower side cervical region. The District accepts that rating. Judy argues the Commission should have awarded eight percent. We affirm. There was evidence the cervical problem was present in 2002. There was a "very small disc protrusion/herniation off to the right side at C5-6." In December 2011, an MRI revealed degenerative disc disease with spondylosis at that level and C4–C5, but the findings were old, with no acute abnormalities noted. This was not evidence, the Commission

found, of the "moderate to severe" degenerative changes that would support more than a four percent rating.

Substantial evidence likewise supports the Commission's finding that Judy suffered no permanent back impairment from the 2011 fall. Jones noted in his rating evaluation that even Judy's treating orthopedist had "related her chronic low back pain to a chronic gait disturbance" (namely an "antalgic lurch gait") from a knee injury that had resulted in "approximately ten knee surgeries." It was causing stiffness and back pain by fall 2015. Indeed, the knee had already been operated on at least three times. Further, the disc bulge at L4–5 that was noted in a lumbar MRI after the 2011 incident was also noted in a lumbar MRI after a previous similar fall six years earlier. Even in the 2011 scan there was "not much of a bulge at L4–5, if any." We cannot say the Commission erred when it found that no permanent back injury was caused in the fall at work.

## II. *Wage-Loss Disability*

The Commission found Judy proved she had sustained a five percent wage-loss disability because of the compensable neck injury. Judy contends that because she is no longer able to do her old job, the Commission's award is "entirely inadequate," and we should remand to assess her "actual loss of earning capacity." On cross-appeal, the District opposes even that award, arguing that Judy's "claimed inability to work is not due to the injuries sustained in 2011."

When a claimant has sustained a permanent impairment rating to the whole body, the Commission is authorized to increase the disability rating based on wage-loss factors. Ark. Code Ann. § 11-9-522(b)(1) (Repl. 2012); *Redd v. Blytheville Sch. Dist. No. 5*, 2014

5

Ark. App. 575, 446 S.W.3d 643. It determines wage-loss disability by considering the medical evidence and a host of factors including motivation, postinjury income, credibility, demeanor, age, education, and work experience. *Cooper v. Univ. of Ark. for Med. Scis.*, 2017 Ark. App. 58, at 7, 510 S.W.3d 304, 309; *Emerson Elec. v. Gaston*, 75 Ark. App. 232, 58 S.W.3d 848 (2001).

First, the record reflects that teaching first grade is not a desk job. It's hard work. Judy testified that she not only had to instruct her students, but also had to physically "get down on their level," kneeling by their chairs, and listening to them read. She had to move desks, put up bulletin boards, and the like. Judy testified she had trouble bending her neck a lot, which affected even her computer work. She had physical therapy for her neck, but it didn't help. Eventually (the record isn't clear when) she decided not to return to work.

The Commission gave "minimal weight" to Dr. Rosenzweig's predictions in June 2020 that she would not be able to work anywhere else. Conceding her advancing age (67 by then), it noted she has marketable educational credentials and work experience. All three commissioners—two who favored the wage-loss award and one who dissented from it—cited Judy's lack of motivation to return to work within her permanent physical restrictions.

In theory, we review the Commission's findings about wage-loss disability, like its impairment finding, for substantial evidence—a somewhat deferential standard. But determining wage-loss disability is a "fact-intensive" inquiry that calls for the Commission to consider a range of listed factors—"and any other factors deemed relevant[.]" *Tillery v. Alma Sch. Dist.*, 2022 Ark. App. 425, at 8.

6

In practice, if there is a basis for finding the claimant suffered a wage loss, and there is no legal barrier to making the award, and the Commission does not recite an improper basis for making it, then the appropriateness of a particular award is beyond meaningful review. Think about it: As the number of factors the Commission can consider increases, the number of unique combinations of factors increases exponentially. Determining that "no fair-minded person" could have made the wage-loss award requires us to consider every combination of factors the Commission could have weighed *and* every combination of ways it could have weighed them. We mention this because both parties took the trouble to appeal the wage-loss award the Commission entered, which we now affirm.

Finally, the District offers that, if the Commission or this Court determines Judy is permanently and totally disabled, an award of permanent total-disability benefits would be time-barred. The Commission did not determine so, and we haven't either. If this limitations argument was meant for us, then we conclude, as the Commission did, that it is moot because there is no relief to be had on the point from the District's legal vantage point.

The Commission's opinion is affirmed in all respects.

Affirmed on direct appeal and on cross-appeal.

BARRETT and MURPHY, JJ., agree.

*Walker Law Group, PLC*, by: *Eddie H. Walker, Jr.*, for appellant.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for separate appellee Clarksville School District.