

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-15-699

| | |
|---|---|
| ROBERT FROST | **Opinion Delivered** MAY 18, 2016 |
| APPELLANT | APPEAL FROM THE ARKANSAS |
| V. | WORKERS' COMPENSATION COMMISSION [NO. G202087] |
| CITY OF ROGERS, MUNICIPAL LEAGUE WCT, AND DEATH & PERMANENT TOTAL DISABILITY TRUST FUND | |
| | AFFIRMED |
| APPELLEES | |

## DAVID M. GLOVER, Judge

This is a workers' compensation case in which Robert Frost sustained a compensable back injury on March 5, 2012, while employed by the City of Rogers (the City). On December 10, 2014, the administrative law judge (ALJ) heard Frost's contested claims for additional medical treatment in the form of pain management and the surgical insertion of a dorsal-column stimulator, permanent-total-disability (PTD) benefits, or, in the alternative, wage-loss benefits, attorney's fees, and compensation rate. Following the hearing, the ALJ concluded Frost had failed to prove the additional medical treatment was reasonable and necessary for his compensable injury; he failed to prove he was permanently, totally disabled; he proved he was entitled to permanent-partial-disability (PPD) benefits in an amount equal to twenty percent to the body as a whole for wage loss suffered as a result of the injury and resulting in an additional fifteen percent over and above the five percent previously accepted by the City; and Frost's compensation rate equaled $269 for total-disability benefits and

$202 for PPD benefits based upon an average weekly wage of $403. The Workers' Compensation Commission (Commission) affirmed and adopted the ALJ's decision, including all findings and conclusions therein. Frost appeals from the Commission's decision, contending it is not supported by substantial evidence concerning 1) the denial of additional medical benefits for continued pain management, 2) the denial of permanent-total disability benefits, and 3) the failure to award additional PPD benefits. We affirm.

Robert Frost was fifty years old at the time of the December 2014 hearing. At the time of his compensable injury on March 5, 2012, he was working as a recycling technician in the City's recycling center. As part of his job duties, he drove a pick-up truck pulling a trailer to businesses, where he would put the full recycling bins onto the trailer and leave empty bins behind.

Following his back injury, he was first treated by Dr. Richard Kyle but changed physicians to Dr. James Blankenship by Commission order dated June 9, 2012. Dr. Blankenship diagnosed Frost's injury as a herniated disc at the L5–S1 level, with spondylolisthesis. Initially, Dr. Blankenship treated Frost conservatively, but those efforts were not successful, and on November 14, 2012, he performed a fusion at L4–5 and L5–S1. Although the fusion resolved Frost's leg pain, he continued to have pain in his lower back and hip. A functional capacities evaluation (FCE) was performed on March 20, 2013; it indicated that Frost gave a reliable effort and that he was capable of returning to work in the medium classification of work, with the ability to occasionally lift up to fifty pounds.

Dr. Blankenship determined that Frost reached maximum-medical improvement (MMI) on May 2, 2013, and assigned him a ten-percent impairment rating for his

compensable injury and a permanent weight-lifting restriction of twenty pounds. At first, the doctor continued to treat him with Lyrica and intermittent hydrocodone. The City accepted the impairment rating and paid Frost PPD benefits in an amount equal to ten percent to the body as a whole, with an additional five percent accepted for wage loss.

Shortly after the MMI determination, the City sent Dr. Blankenship a video, which was never introduced into evidence.[1] It is undisputed that the video showed Frost in two settings—first, performing activities at his house (changing a tire with the help of a wheeled jack), and second, riding to a casino in a car driven by his wife. Both Frost and his wife viewed the video and testified at length about the substance of the video. According to Dr. Blankenship's assessment of the video in a May 20, 2013 letter, Frost's complaints to him were not corroborated by the video. Dr. Blankenship then raised the weight-lifting restriction from twenty to fifty pounds in accordance with the FCE and also subsequently refused to prescribe any additional narcotic pain medication, although the medications were reduced over time.

As a consequence of Dr. Blankenship's decisions, Frost sought treatment from his primary-care physician, Dr. Teresa Gatton. In a February 6, 2014 report, Dr. Gatton prescribed Flexeril, hydrocodone, and Lyrica, and referred Frost to Dr. John Knudsen, a pain-management physician. Dr. Knudsen evaluated Frost on February 25, 2014, and prescribed methadone for him and recommended epidural steroid injections. These additional efforts did not resolve Frost's ailments; therefore, he sought treatment from

---

[1] Neither party sought to introduce the video.

SLIP OPINION

Dr. Joseph Graham in Galena, Kansas, who performed a procedure on Frost on November 3, 2014, to implant a spinal-cord stimulator.[2]

Frost sought compensation for the additional medical treatment in the form of pain management and the spinal-cord stimulator implanted by Dr. Graham, and he also sought payment of PTD benefits, or, in the alternative, additional wage-loss benefits. As mentioned previously, the Commission affirmed and adopted the ALJ's findings and conclusions that denied the additional medical treatment and the PTD benefits, but determined that Frost had proved he was entitled to PPD benefits in an amount equal to twenty percent to the body as a whole for a loss in wage-earning capacity, which included the five percent previously accepted by the City. This appeal followed.

We view the evidence and all reasonable inferences in the light most favorable to the Commission's findings and affirm if supported by substantial evidence. *Pyle v. Woodfield, Inc.*, 2009 Ark. App. 251, 306 S.W.3d 455. Substantial evidence is that which a reasonable mind might find as adequate to support a conclusion. *Id.* We defer to the Commission on issues involving credibility and the weight of evidence. *Target Corp. v. Bumgarner*, 2015 Ark. App. 112, 455 S.W.3d 378. It is the Commission's duty to weigh medical evidence and resolve, as a question of fact, any conflicting evidence; however, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Pyle*, *supra*. Where the Commission has denied a claim because the claimant failed to meet his burden of proof,

---

[2] The ALJ rejected the City's position that the treatment Frost received from Drs. Gatton, Knudsen, and Graham was not authorized, concluding that the City did not comply with the statutory mandate of furnishing a copy of a notice of change-of-physician procedures to Frost. The City did not appeal that finding.

the substantial-evidence standard of review requires that we affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Id.* On review of workers' compensation cases, the question is not whether the evidence would have supported findings contrary to the ones made by the Commission; rather, it is whether there is substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact. *Burris v. L & B Moving Storage*, 83 Ark. App. 290, 123 S.W.3d 123 (2003).

For his first point of appeal, Frost contends the Commission decision denying him medical benefits for continued pain management is not supported by substantial evidence. He argues in large part that the Commission arbitrarily disregarded the majority of the medical evidence in the record, including the reports of other physicians and positive notes in the FCE, and also challenges the absence of the video in the record. We disagree with his arguments.

The Commission did not arbitrarily disregard the other medical evidence or the FCE. The decision specifically noted reports and treatment by Drs. Gatton, Knudsen, and Graham, and also discussed the results of the FCE. The Commission concluded, however, that Dr. Blankenship's medical opinion was entitled to greater weight. That conclusion was based in part on the fact Dr. Blankenship had treated Frost for over a year; he had ordered the FCE that showed Frost capable of performing work in the medium classification and occasionally lifting fifty pounds; he had determined Frost had reached MMI for his injury from a surgical intervention standpoint based on clinical findings and the failure to respond to different injections and medications; he initially set a lifting restriction of twenty pounds

and continued Lyrica and intermittent hydrocodone until he viewed the video; he was a neurosurgeon; he determined Frost needed to wean off the medications if he was going to go back to work; and he determined narcotics were not the answer. The decision acknowledged the spinal-cord stimulator was fairly new because Frost had not even healed from the surgery and was to return for some adjustments but concluded that Frost was taking the same amount of pain medications he had taken prior to the implant procedure, demonstrating that the procedure was not reasonable or necessary.

Frost acknowledges that the Commission is not bound by the rules of evidence but argues further that, nevertheless, the "rules of fair play" required the video to be part of the record for the Commission to evaluate the evidence, and it was not. The argument is not convincing. In addition to Dr. Blankenship's assessment of the video, Frost and his wife viewed and testified at length about the contents of the video, expressing their opinions about what the video showed with respect to Frost's physical capabilities. Neither party sought to introduce the video itself. The rules of fair play were firmly in place.

In short, it was Frost's burden to prove that the additional medical treatment in the form of pain management and the implanting of a dorsal-column stimulator was reasonable and necessary to treat his compensable back injury. The Commission gave more weight to Dr. Blankenship's opinion that additional medical intervention would not help Frost's situation, but it did not arbitrarily disregard the conflicting medical evidence. We cannot say the Commission's explanation for its decision did not constitute a substantial basis for the denial of the additional medical treatment sought by Frost.

For his second point, Frost contends the Commission decision denying PTD benefits is not supported by substantial evidence. For this issue, Frost bore the burden of proving he was not able to earn any meaningful wages in the same or other employment because of his compensable injury. The Commission concluded he did not meet his burden of proving permanent total disability. Frost argues he is fifty years old; he has only a tenth-grade education and no computer skills; he is disqualified from resuming his prior employment because he can no longer engage in frequent heavy lifting; he cannot perform prolonged stooping or bending activities; his work history was that of heavy labor; he requires narcotic pain medications and therefore cannot drive or operate machinery; and the vocational counselor gave him twelve leads on jobs, for most of which he applied,[3] and he did not get any of them.

The Commission focused on the following facts, weighing them differently as is in its realm to do: Frost was assigned only a ten-percent impairment rating by Dr. Blankenship for his injury; he has a tenth-grade education and can read; he can ride his three-wheel vehicle around town; he can do some meal preparation and is able to dress himself; he had not looked for any jobs beyond the ones identified by the counselor; and the FCE indicated he could perform jobs in the medium classification and occasionally lift up to fifty pounds. Based on these facts, the Commission concluded that Frost had suffered a loss in wage-earning capacity in an amount equal to twenty percent to the body as a whole. Again, we cannot say the Commission's explanation for its decision did not constitute a substantial basis for the denial of PTD benefits sought by Frost.

---

[3] He did not apply for a Pizza Hut delivery-driver job because it was too far away.

Finally, Frost contends the Commission's failure to award additional PPD benefits is not supported by substantial evidence.   He contends, alternatively, that if our court does not reverse for an award of PTD benefits, he is still entitled to a higher percentage for wage-loss disability.   The Commission's explanation for its denial of assignment of a higher percentage included the following facts:   Dr. Blankenship assigned Frost a ten-percent impairment rating; the FCE reported Frost was capable of working in the medium classification and capable of occasionally lifting up to fifty pounds; he is only fifty years old; he has a tenth-grade education; and he is able to read.   This explanation constitutes a substantial basis for the Commission's denial of a higher disability percentage.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Hatfield Law Firm*, by: *Jason M. Hatfield*; and *Cullen & Co., PLC*, by: *Tim J. Cullen*, for appellant.

*Katie Bodenhamer*, for appellant.