Cite as 2022 Ark. App. 134

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-21-190

| | | |
|---|---|---|
| STEVEN CARRICK | | Opinion Delivered March 16, 2022 |
| | APPELLANT | |
| V. | | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G901705] |
| BAPTIST HEALTH, CLAIMS ADMINISTRATIVE SERVICES; AND DEATH AND PERMANENT TOTAL DISABILITY TRUST FUND | | |
| | APPELLEES | AFFIRMED |

**KENNETH S. HIXSON, Judge**

This is a workers' compensation case. Appellant Steven Carrick sustained a compensable right-shoulder contusion injury while working for appellee Baptist Health (Baptist) on November 21, 2018. Baptist accepted the injury as compensable and covered related medical expenses. Carrick subsequently filed a claim for additional medical benefits, temporary total-disability benefits, a permanent partial impairment, and permanent wage-loss benefits, all of which were controverted by Baptist. After a hearing, the administrative law judge (ALJ) denied all of Carrick's claims for additional benefits. The Workers' Compensation Commission (Commission) unanimously affirmed and adopted the ALJ's findings. Carrick now appeals, arguing that the Commission's decision with respect to each of these issues is not supported by substantial evidence. We affirm.

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Ark. Health Ctr. v. Burnett*, 2018 Ark. App. 427, 558 S.W.3d 408. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Id.* Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347. When the Commission denies a claim due to the claimant's failure to meet his or her burden of proof, the substantial-evidence standard of review requires this court to affirm the Commission's decision if the opinion displays a substantial basis for the denial of relief. *Jones v. Embassy Suites, Little Rock*, 2021 Ark. App. 312. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Fred's, Inc. v. Jefferson*, 361 Ark. 258, 206 S.W.3d 238 (2005).

Carrick, who was then thirty years old, worked for Baptist in the hospital cafeteria. On November 21, 2018, Carrick was moving a four-wheel cooler when a ceiling tile fell and

2

struck him in the right upper arm. Carrick testified that this did not result in any cuts or lacerations to his skin, although he noticed that his shoulder was "a little bit red." On the following day, which was Thanksgiving, Carrick noticed some bruising to his shoulder, and he called his manager to tell him he would not be returning to work until he saw a doctor. Because it was the Thanksgiving holiday, Carrick was unable to see a doctor until the following Monday, November 26, 2018, when he visited Dr. Chen Wang. Dr. Wang diagnosed a shoulder contusion and released Carrick to full duty on November 28, 2018. Carrick returned to work that day and continued to work for Baptist until February 19, 2019. According to Carrick, he quit his employment with Baptist "due to the injury and due to unsafe work conditions." In his testimony, Carrick stated that after the work-related incident, he had trouble continuing his duties at Baptist and that he still has problems with his right shoulder. Carrick, however, also stated that he had two other jobs after quitting his job at Baptist.

The relevant medical evidence is as follows. When Carrick initially sought treatment on November 26, 2018, Dr. Wang assessed right arm pain and prescribed pain medication. Dr. Wang reported that it "looks like a minor contusion" and returned Carrick to regular work beginning on November 28, 2018. Carrick visited St. Vincent Hospital on January 28, 2019, and the Little Rock Diagnostic Clinic on March 26, 2019, again complaining of right arm pain. The March 26, 2019 medical report noted that there was no redness or swelling but referred Carrick to physical therapy for further treatment and evaluation.

On April 2, 2019, Carrick came under the care of Dr. Victor Vargas. Dr. Vargas ordered an x-ray of Carrick's right shoulder and gave the interpretation that it "showed acceptable subacromial space, acromion type I, no significant osteoarthritis of the acromioclavicular joint." In the April 2, 2019 report, Dr. Vargas assessed right-shoulder pain and right subacromial impingement with bursitis, ordered physical therapy for Carrick's shoulder, and noted that Carrick was at full duty with no restrictions.

In a follow-up visit on April 29, 2019, Dr. Vargas reported that Carrick was doing well in physical therapy, that he had improved, and that there was no pain or swelling. In that report, Dr. Vargas found normal range of motion in Carrick's shoulder and further found that his shoulder was stable with no crepitance. Dr. Vargas stated that, based on the *AMA Guidelines to the Evaluation of Permanent Impairment*, Carrick has a 0 percent impairment rating as a result of the pain in his right shoulder.[1] On April 29, 2019, Dr. Vargas released Carrick to maximum medical improvement, stating that Carrick had no restrictions and could work on full duty.

Carrick requested a change of physician to Dr. Shahryar Ahmadi, which was approved by the Commission on July 22, 2019. A right-shoulder MRI was performed, and on August 22, 2019, Dr. Ahmadi found that the acromioclavicular joint appeared unremarkable and that there was no evidence of tendinosis or tendon tear. Dr. Ahmadi gave the impression,

---

[1]The record shows that, after Dr. Vargas assigned a 0 percent anatomical rating, Carrick filed a complaint with the Arkansas State Medical Board alleging that Dr. Vargas had committed fraud with respect to this rating and also that Dr. Vargas falsified the measurements in the impairment-rating test.

"Focal subcutaneous fat contusion and mild focal deltoid musculature strain" as well as "[n]o intra-articular abnormality noted within the right shoulder articulation."

Carrick returned to Dr. Ahmadi on September 18, 2019.  On that day, Dr. Ahmadi gave the following impression/plan:

> Patient is a 31-year-old man with right shoulder pain, normal MRI.  Ultrasound today was reviewed and discussed with the radiologist, no pathology was seen.  From an orthopedic standpoint, there is no pathology in the shoulder to warrant further treatment.  He can return to full activities as tolerated.  No need for follow up with us.

On October 22, 2019, Dr. Ahmadi reported that Carrick had "right shoulder pain without any finding [on] MRI or ultrasound."  The report went on to state that an impairment rating was assessed based on passive-range-of-motion tests, but that "[p]atient has significant guarding and I do not know if this was due to pain or it was intentional."  Based on these passive range-of-motion tests, a whole-body permanent impairment of 9 percent was indicated.

Carrick visited Dr. Ahmadi again on March 3, 2020.  In the report from that visit, Dr. Ahmadi stated that on evaluation of the right upper extremity, "the patient has full range of motion all directions to the shoulder."  Dr. Ahmadi also stated that Carrick had no weakness during a battery of rotator-cuff tests.

On April 9, 2020, Carrick contacted UAMS in writing requesting that Dr. Ahmadi's report from March 3, 2020, be amended.  In this request, Carrick stated:

> I did not test range of motion in all directions.  With shoulder I did not display a full range of motion.  I also added, popping up shoulder, with movement, and also explained pain when doing bear hug.

5

Carrick received a written response stating, "UAMS must deny this request because we have determined, by speaking with the clinicians involved in your care, the information is accurate and complete based on the interview at the time of your visit."

Carrick decided to visit another orthopedic physician, Dr. William Hefley, on April 29, 2020. Dr. Hefley reported that Carrick "has been seen by multiple orthopedists and had x-rays, MRIs which all have been normal" and that "he was released at MMI by UAMS, but he wants a second opinion." Dr. Hefley ordered and interpreted an additional right-shoulder x-ray and reported, "No acute process, joint space preserved . . . x-rays look good." Dr. Hefley also stated that Carrick's previous MRI "was negative." Dr. Hefley did not believe Carrick's pain was caused by his shoulder and ordered an MRI of Carrick's cervical spine. Dr. Hefley stated, "If that is negative, he can probably be released."

Carrick also saw a chiropractor, Dr. Melissa Faulkenberry, on July 20, 2020. Dr. Faulkenberry noted a "chief complaint of cervical, upper thoracic, right cervical dorsal, left cervical dorsal, left cervical, right cervical, mid thoracic, lower thoracic, lumbar, left lower thoracic, right lower thoracic discomfort." Dr. Faulkenberry made no finding as to what caused Carrick's issues and reported that the onset of pain was gradual and was first noticed over a year ago. Dr. Faulkenberry gave the assessment of segmental and somatic dysfunction of Carrick's cervical, thoracic, and lumbar regions as well as "contracture of muscle, unspecified site."

6

Baptist submitted a report from Functional Testing Centers, Inc., which was dated January 14 and amended February 18, 2020. This report was titled "IMPAIRMENT Estimate based off Medical Records—Upper Extremity." The report was authored by a physical therapist and a certified senior disability analyst. The report concluded that, based on the medical records provided, including the reports of Dr. Vargas and Dr. Ahmadi, there was no documentation of objective findings to support any impairment of Carrick's right upper extremity. While recognizing that in one report, Dr. Ahmadi assigned a 9 percent impairment rating using passive range-of-motion tests, the report explained:

> In this case, Dr. Ahmadi clearly stated that Mr. Carrick's demonstrated motion loss was due to pain complaints or was limited intentionally by the patient. In either case, this does not constitute an objective finding and measurable finding. There were also no objective findings on diagnostic testing of Mr. Carrick's right shoulder.

In the opinion of the ALJ and, by adoption, the Commission, the Commission denied the additional benefits requested by Carrick in relation to his compensable shoulder injury. With respect to Carrick's claim for temporary total-disability benefits, the Commission found that Carrick could have continued working at Baptist and that no treating physician opined that he was unable to work. With respect to the permanent benefits sought by Carrick, the Commission found that Carrick failed to satisfy his burden to prove objective findings of a permanent impairment and that Carrick had failed to satisfy any proof requirements for permanent wage loss. The Commission also found that, given the medical evidence, all reasonable and necessary medical treatment had been provided and

7

that Carrick failed to prove that any additional medical treatment was reasonably necessary. Carrick challenges each of these findings on appeal, and we affirm.

I. *Temporary Total-Disability Benefits*

Temporary total disability (TTD) is that period within the healing period in which a claimant suffers a total incapacity to earn wages. *Bronco Indus. Servs., LLC v. Brooks*, 2021 Ark. App. 279, 625 S.W.3d 753. Carrick argues that he was entitled to TTD benefits, first asserting that he lost wages between the November 21, 2018 compensable injury and when Dr. Wang returned him to full duty on November 28, 2018.[2] Carrick further asserts that he was given another two-day off-work slip after visiting another doctor in January 2018. Carrick claims that the record shows that he currently remains in his healing period and is totally incapacitated from earning wages, and he asserts that the Commission made no finding on when his healing period ended.

Carrick correctly notes that the Commission made no finding as to when his healing period ended or whether he remained in his healing period. However, such a finding was unnecessary because the Commission found that Carrick had failed to prove that he was incapacitated from earning wages, which alone disqualified Carrick from TTD benefits. *See Wall Farms, LLC v. Hulsey*, 2017 Ark. App. 624, 534 S.W.3d 771. We conclude that this finding was supported by substantial evidence. After Carrick visited Dr. Wang on November

---

[2]We note that TTD benefits were not available for this initial brief period when Carrick was off work because Ark. Code Ann. § 11-9-501(a)(1) (Repl. 2012) provides that compensation to the injured employee shall not be allowed for the first seven days' disability resulting from injury, excluding the day of injury.

26, 2018, Dr. Wang observed a "minor contusion" and released Carrick to full duty beginning just two days later on November 28, 2018. Carrick continued to work for Baptist until February 19, 2019, and he admitted that when he quit his employment, he had no medical documentation stating that he could not work. Carrick also acknowledged that, after his compensable shoulder injury, he held a second job at Kroger while still working for Baptist and that he worked at two more jobs after quitting his job at Baptist. None of these other jobs ended due to any doctor-given restrictions that could support a claim of total incapacitation. In April 2019, Dr. Vargas noted that Carrick was at full duty with no restrictions, and none of Carrick's treating physicians gave the opinion that Carrick suffered a total incapacity to earn wages. On this record, we hold that there was a substantial basis for the Commission's denial of Carrick's claim for TTD benefits.

## II. *Permanent Benefits*

Carrick next argues that the Commission erred in denying his claim for a permanent partial impairment and for permanent wage-loss benefits. We begin with Carrick's claim for a permanent-impairment rating.

"Permanent impairment" has been defined as "any permanent functional or anatomical loss remaining after the healing period has ended." *Main v. Metals*, 2010 Ark. App. 585, 377 S.W.3d 506. Any determination of the existence or extent of physical impairment must be supported by objective and measurable findings. Ark. Code Ann. § 11-9-704(c)(1)(B) (Repl. 2012). "Objective findings" are those findings that cannot come under the voluntary control of the patient, and complaints of pain are not to be considered

9

objective medical findings.  Ark. Code Ann. § 11-9-102(16)(A) (Repl. 2012); *Reed v. First Step, Inc.*, 2019 Ark. App. 289, 577 S.W.3d 424.  The Commission is authorized to decide which portions of the medical evidence to credit and to translate this evidence into a finding of permanent impairment using the *AMA Guides*; thus, the Commission may assess its own impairment rating rather than rely solely on its determination of the validity of ratings assigned by physicians.  *Firestone Bldg. Prods. v. Hopson*, 2013 Ark. App. 618, 430 S.W.3d 162.

Carrick argues that the Commission erred in finding that he failed to prove a permanent impairment with objective findings.  Carrick asserts that the August 2019 MRI produced objective findings of a "focal subcutaneous fat contusion and mild focal deltoid musculature strain."  Carrick further asserts that Dr. Ahmadi assigned a 9 percent impairment rating based on passive range-of-motion tests.  While acknowledging that Dr. Vargas assigned a 0 percent impairment rating and that the Functional Testing Center's report agreed with that assessment, Carrick contends that these opinions should have been given little weight.

Although the August MRI detected a contusion and a mild strain, there is no medical opinion in the record stating that these are objective findings of a permanent impairment.  In fact, the medical reports describe this MRI as "normal" and "negative."  With respect to the 9 percent impairment rating assigned by Dr. Ahmadi in October 2019, this rating was based on passive range-of-motion tests.  We have held that although active range-of-motion tests are subjective because they are within the claimant's voluntary control, passive range-of-motion tests are conducted by the examiner and may constitute objective evidence.  *See Evans*

10

*v. Firestone Bldg. Prods., Ltd.*, 2020 Ark. App. 80, 594 S.W.3d 139. Dr. Ahmadi, however, noted that during his passive range-of-motion tests, Carrick had "significant guarding and I do not know if this was due to pain or it was intentional." Moreover, in March 2020, Dr. Ahmadi reported that Carrick had "full range of motion all directions to the shoulder."[3] Both Dr. Vargas and the report by the Functional Testing Center assigned no permanent-impairment rating to Carrick, and it was within the Commission's province to credit these opinions. We hold that substantial evidence supports the Commission's finding that Carrick failed to prove objective findings to support a permanent impairment.

Carrick also argues that the Commission erred in not awarding permanent wage-loss disability benefits. When a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating based upon wage-loss factors. *Calhoun v. Area Agency on Aging of Se. Ark.*, 2021 Ark. 56, 618 S.W.3d 137. The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Id.* However, in order to receive wage-loss disability benefits in excess of one's permanent physical impairment, the claimant must first prove that he sustained a permanent physical impairment as a result of the compensable injury. *Hope Sch. Dist. v. Wilson*, 2011 Ark. App. 219, 382 S.W.3d 782. Here, because we affirm the Commission's finding that Carrick failed to prove a permanent impairment, we also affirm its finding that Carrick is not entitled to permanent wage-loss-disability benefits.

---

[3]As noted, *supra*, Carrick later unsuccessfully attempted to have this finding by Dr. Ahmadi altered.

11

III. *Additional Medical Benefits*

Carrick next argues that the Commission erred in denying his claim for additional medical benefits. Carrick contends that he still suffers from symptoms that could be alleviated with additional physical therapy, and he asserts that his treating chiropractor recommended a treatment plan to deal with his continuing issues.

Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to provide an employee with medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." However, a claimant bears the burden of proving entitlement to additional medical treatment. *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, 381 S.W.3d 869. What constitutes reasonably necessary treatment is a question of fact for the Commission. *Id.* The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Id.* Furthermore, it is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact and to draw inferences when testimony is open to more than a single interpretation. *Id.*

The Commission noted in its opinion that the MRI detected no more than a contusion and minor strain. In April 2019, Dr. Vargas stated that Carrick had reached maximum medical improvement, had no restrictions, and could work full duty. In September 2019, Dr. Ahmadi reported that "there is no pathology in the shoulder to warrant further treatment" and "no need for follow up with us." With respect to the chiropractor Carrick visited in July 2020, she diagnosed only multilevel back issues that had developed

gradually with no recommendation of any further treatment for the compensable shoulder injury. Based on the medical evidence presented, we hold that there was a substantial basis for the Commission's finding that Carrick failed in his burden of proving that any further medical treatment was reasonably necessary in connection with his compensable shoulder injury.

## IV. *The Commission's Opinion*

Finally, we note that in addition to the foregoing arguments, Carrick also argues that the Commission failed to conduct a de novo review of the record and failed to make specific findings of fact to support its decision. However, we disagree.

When an ALJ's decision is appealed to the Commission, the Commission does not sit as an appellate court to review the ALJ's findings; instead, the Commission makes a de novo determination on the facts. *Jackson v. Smiley Sawmill, LLC*, 2019 Ark. App. 235, 576 S.W.3d 43. In carrying out its duty to find the facts, the Commission is required to make findings of fact, and those findings must contain all the specific facts relevant to the issues so that the reviewing court may determine whether the Commission has resolved these issues in conformity with the law. *Stallworth v. Hayes Mech., Inc.*, 2013 Ark. App. 188. However, in this case, the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law. *Marshall v. Ark. Dep't of Corr.*, 2020 Ark. App. 112, 594 S.W.3d 160. In so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's opinion. *Id.*

The Commission's opinion stated:

We have carefully conducted a de novo review of the entire record and find that the Administrative Law Judge's decision is supported by a preponderance of the credible evidence, correctly applies the law, and should be affirmed. Specifically, we find from a preponderance of the evidence that the findings made by the Administrative Law Judge are correct and they are, therefore, adopted by the full Commission.

It is evident that the Commission fulfilled its duty to conduct a de novo review and adopted the ALJ's findings as its own. And in our review of the ALJ's opinion, adopted by the Commission, we have determined that sufficient findings were made to support each aspect of the decision.

V. *Conclusion*

For the foregoing reasons, we hold that substantial evidence supports all the findings by the Commission that are challenged in this appeal. Therefore, the Commission's decision denying additional workers' compensation benefits is affirmed in its entirety.

Affirmed.

GRUBER and VAUGHT, JJ., agree.

*Steven Carrick*, pro se appellant.

*Worley, Wood & Parrish, P.A.*, by: *Jarrod S. Parrish*, for appellees.