Cite as 2022 Ark. App. 313

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-21-547

MICHAEL BRANNIGAN

APPELLANT

V.

UNIVERSITY OF ARKANSAS, PUBLIC
EMPLOYEE CLAIMS DIVISION, AND
DEATH AND PERMANENT TOTAL
DISABILITY TRUST FUND

APPELLEES

Opinion Delivered September 7, 2022

APPEAL FROM THE ARKANSAS
WORKERS' COMPENSATION
COMMISSION
[NO. G702804]

AFFIRMED

## RITA W. GRUBER, Judge

Appellant Michael Brannigan appeals from a decision of the Arkansas Workers'

Compensation Commission (the "Commission") denying his claim for additional medical

treatment. He contends that substantial evidence does not support the Commission's

finding that the epidural steroid injection was not reasonably necessary in connection with

his admittedly compensable injury. He also contends that the Commission's disposition of

the case denying and dismissing his claim was inappropriate. We affirm.

Brannigan, thirty-six years old at the time of the hearing, was employed as an arborist

for appellee University of Arkansas on February 1, 2017, when he injured his back while

using a backpack blower to clear the trails at Garvin Woodland Gardens in Hot Springs. On

the day of the incident, he saw Dr. Mark Larey, DO, and reported that he had back pain as

a result of lifting and twisting while wearing the backpack blower. Dr. Larey's notes indicate

that Brannigan had previously injured his low back in February 2015 when he fell on his back while wearing a backpack blower.[1] In 2015, Brannigan had physical therapy without improvement, an MRI, and a neurosurgery referral to Dr. Wayne Bruffett. Brannigan was released to regular duty in May 2016. Dr. Larey's notes from February 1, 2017, state that Brannigan's back pain began to recur around November 2016, had been progressively worsening, and "significantly increased" when he put the backpack blower on that day. Dr. Larey noted that a prior MRI showed degenerative disc disease at L5-S1 and requested a comparative re-referral to Dr. Bruffett. Dr. Larey's examination noted palpable spasm and limited range of motion. He recommended that Brannigan be on restricted-work duty and prescribed Prednisone, Flexeril, and pain medication to be used as needed.

Another lumbar MRI performed on February 16, 2017, revealed "mild disc degeneration" and "mild disc bulges" at T12-L1 and L5-S1. Dr. Bruffett's March 10, 2017 report provides that Brannigan's 2017 MRI revealed some mild degenerative changes. He assessed Brannigan with degenerative disease of the lumbar spine with chronic low-back pain. Dr. Bruffett opined that Brannigan's condition would "best be treated with anti-inflammatory medication. . . . [T]here is no specific injection or therapy or surgery that is going to cure his complaints. " The report further stated that Brannigan did not have "much objective evidence of injury." Dr. Bruffett did not assign any work restrictions and found

---

[1]According to the record, the initial injury occurred in 2014.

there was no permanent impairment; Brannigan had reached maximum medical improvement (MMI).

In August 2017, Brannigan saw Dr. Mark Miedema, a pain specialist, after being allowed a one-time change of physician. Dr. Miedema assessed Brannigan with low-back pain; degeneration of the lumbosacral intervertebral disc; and lumbosacral radiculitis described as "Right and Left S1 chemical radiculitis secondary to disc degeneration at L5-S1 causing lower radicular symptoms." Dr. Miedema recommended an epidural steroid injection for therapeutic purposes on the basis of the "severity of [Brannigan's] pain and functional limitation." He agreed with most of Dr. Bruffett's assessment, including that Brannigan did not have a permanent impairment and there were no restrictions to place on Brannigan; however, he did not think Brannigan had reached MMI but could benefit from the injection and hopefully reach MMI as a result.

On June 21, 2019, appellee moved to dismiss for want of prosecution. Brannigan objected, and a hearing was set for December 27, but he requested a continuance on December 19. Appellee filed a second motion to dismiss for want of prosecution on September 10, 2020, to which Brannigan again objected and requested a hearing, which occurred on March 10, 2021. The only issue to be litigated at the hearing was whether Brannigan was entitled to the additional treatment recommended by Dr. Miedema—specifically, the epidural steroid injection. In addition, Brannigan sought a change of physician should the injection be found to be reasonable and necessary because Dr. Miedema had moved to Northwest Arkansas.

3

At the hearing, Brannigan explained that he was employed as an arborist or tree climber, which required him to climb trees using a rope and holding a chainsaw to trim and remove limbs as necessary. His job also required him to use a backpack blower to clear the trails every morning. He explained that he had previously injured his back when he fell on the blower but could not recall the date. And when he was blowing on February 1, 2017, he "twisted or something" and hurt his back again. Brannigan testified that he "vaguely" remembered seeing Dr. Bruffett in 2017 but recalled Dr. Miedema recommending "some kind of shots" that were never provided. He testified that he was still having problems with his back and admitted that he had testified in his July 2017 deposition that he had been involved in a motor-vehicle accident since February 2017. Brannigan could not recall the date of the accident but said it was two or three years ago. Brannigan said that he injured his neck and shoulder in the car accident and "slightly injured" his back in the "same spot" as his work injury. As a result of the car accident, Brannigan received medical treatment, including physical therapy, for about two months. He testified that he had back pain both before and after the car accident.

On cross-examination, Brannigan acknowledged that his deposition was taken on July 18, 2017. He said that since he had worked at Garvin Gardens, he worked as an arborist at other tree companies and washed cars at an auto shop. He explained that the tree companies did not keep him long because he could not do the work. Brannigan acknowledged that he testified at his deposition in 2017 that he had kayaked, rode motorcycles, and hunted, and he still participated in the latter two. When asked about the medical treatment sought after

4

the car accident, he could not remember where he was treated but said he stopped because it was not working. His neck and shoulder stopped hurting and his back went back to "normal," which he described as "hurting like hell." Since treatment after the car accident, he did go to a chiropractor but stated it was a waste of time, which was why he wanted the treatment suggested by Dr. Miedema in 2017. He did not take any medication, either prescription or over the counter, for his back. When asked by the ALJ, Brannigan could not recall the date of his car accident, indicating that he did not go to the emergency room but sought treatment the following day. He also said that there was a settlement as a result of the accident, which paid for his medical treatment and truck.

The ALJ found that Brannigan's "current need for additional medical treatment (in the form of epidural steroid injections)" was not reasonably necessary in connection with his February 1, 2017 compensable back injury. Brannigan's testimony was found to be "less than forthcoming" because he could not recall the date of his motor-vehicle accident, and his July 18, 2017 deposition showed that he had been involved in a car wreck within five and a half months after the February 1 compensable injury. The ALJ noted that in the car accident, Brannigan injured his shoulder, neck, and the "same spot" on his back as the work injury, but he gave different explanations for stopping treatment—his symptoms had resolved and the treatment was pointless. The ALJ also recognized that Dr. Miedema's records contained no mention of Brannigan's being involved in a car accident.

Due to the incomplete medical history provided by Brannigan to Dr. Miedema, the ALJ attached minimal weight to Dr. Miedema's expert opinions of August 2017, including

that Brannigan had not reached MMI. Instead, the ALJ assigned "significant weight" to Dr. Bruffett's expert opinion of March 2017 because it was consistent with the findings of two lumbar MRIs that revealed preexisting degenerative disc disease and chronic low-back pain dating back to the prior injury. Recognizing that Brannigan's previous work injury occurred several years earlier and that he was suffering from chronic symptoms of degenerative disc disease at the time of his 2017 injury, the ALJ found that the evidence demonstrated that Brannigan suffered a minor aggravation of a preexisting condition, which had resolved. Further, the ALJ found that the preponderance of the evidence clearly indicated that Brannigan's current symptoms, if any, were the result of his preexisting degenerative disc disease, prior 2014 back injury, and subsequent automobile accident.

In a split decision, the Commission affirmed and adopted the decision of the ALJ, and Brannigan timely appealed the Commission's decision. When the Commission affirms and adopts the ALJ's opinion, thereby making the findings and conclusions of the ALJ the Commission's findings and conclusions, we consider both the ALJ's opinion and the Commission's opinion in our review. *Emergency Ambulance Serv., Inc. v. Burnett*, 2015 Ark. App. 288, at 1, 462 S.W.3d 369, 370.

In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. *Willis v. Ark. Dep't of Corr.*, 2021 Ark. App. 50, 616 S.W.3d 679. When the Commission denies benefits because the claimant has failed to meet his or her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision

6

displays a substantial basis for the denial of relief. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. *Id.*

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* Once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Id.* It is within the Commission's province to reconcile conflicting evidence, including the medical evidence, and to determine the true facts. *Sosa v. Kawneer Co., Inc.*, 2022 Ark. App. 195, at 7, 645 S.W.3d 26, 31. Although it is within the province of the Commission to weigh conflicting medical evidence, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Id.* But when the Commission chooses to accept the testimony of one physician over that of another, the appellate court is powerless to reverse the decision. *Id.*

Brannigan argues that substantial evidence does not support the Commission's decision to deny additional treatment in the form of an epidural steroid injection for his admittedly compensable injury.[2] Arkansas Code Annotated section 11-9-508(a) (Supp. 2021)

---

[2]In his brief, Brannigan also argues, alternatively, that he should be entitled to additional treatment consisting of either epidural steroid injections or anti-inflammatory medication recommended by Dr. Bruffett. While there is no indication appellant was denied anti-inflammatory medication, he did not make this argument below, and it is not preserved for our review. *Clark v. Mickey's Special Affs., Inc.*, 2015 Ark. App. 326 (citing *St. Edward Mercy Med. Ctr. v. Chrisman*, 2012 Ark. App. 475, at 6, 422 S.W.3d 171, 175 ("In order to preserve

7

requires the employer of an injured employee to promptly provide such medical and surgical services "as may be reasonably necessary in connection with the injury received by the employee." The employee must prove, by a preponderance of the evidence, that medical treatment is reasonable and necessary. *Wal-Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 120 S.W.3d 153 (2003). What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact. *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005). When the Commission denies a claim due to the claimant's failure to meet his or her of proof, the substantial-evidence standard of review requires this court to affirm the Commission's decision if the opinion displays a substantial basis for the denial of relief. *Carrick v. Baptist Health*, 2022 Ark. App. 134, at 2, 643 S.W.3d 466, 469–70. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.*

Brannigan's injury on February 1, 2017, was accepted as compensable. The only issue was whether the epidural steroid injection recommended by Dr. Miedema in August 2017 was reasonably necessary medical treatment in conjunction with the injury. Here, Dr. Bruffett performed an independent medical examination on March 10, 2017, and assessed Brannigan with degenerative disc disease of the lumbar spine with chronic low-back pain.

---

an issue for appellate review in a workers' compensation case, it is a party's responsibility to present the issue to the Commission and obtain a ruling.")).

He opined that Brannigan would best be treated with anti-inflammatory medication (ibuprofen), instructing him to discontinue the medication if it was not effective, and that there was no injection, therapy, or surgery that would cure his complaints. Further, Dr. Bruffett stated that Brannigan did not have "much objective evidence of injury," did not require work restrictions, and had not sustained "any type of injury that would result in permanent impairment." After receiving a change of physician for his compensable back injury, Brannigan saw Dr. Miedema on August 17. Dr. Miedema, a pain-management physician, generally agreed with Dr. Bruffett's opinion but did not think Brannigan had reached MMI. He was hopeful that an epidural steroid injection could lead to MMI.

The Commission chose to accept the opinion of Dr. Bruffett over that of Dr. Miedema, specifically stating that it attached minimal weight to Dr. Miedema's opinion that Brannigan had not reached MMI. The Commission explained that Dr. Miedema's opinion was based on an incomplete medical history provided by Brannigan, and it found that Brannigan's testimony was "less than forthcoming." Specifically, Brannigan had sustained an injury in a motor-vehicle accident between his February 1 injury and his visit to Dr. Miedema and could not recall the date of the accident at the hearing. Moreover, Dr. Miedema's notes do not mention that Brannigan had been involved in a motor-vehicle accident. In his deposition taken by appellee on July 18, 2017, Brannigan admitted he had been involved in a car accident after his February 1, 2017 compensable injury. At the hearing, Brannigan admitted that his neck, shoulder, and back were hurt in the car accident. He elaborated that he injured his back in the "same spot" as he did in the work injury. He

9

testified at the hearing that he stopped treatment because his symptoms had resolved but also testified that the treatment was "pointless."

Here, the Commission credited the opinion of Dr. Bruffett over the opinion of Dr. Miedema, in part because Dr. Miedema's opinion was based on an incomplete history provided by Brannigan. The Commission also questioned the credibility of Brannigan's testimony regarding his injury. When the Commission chooses to accept the testimony of one physician over that of another, the appellate court is powerless to reverse the decision. *Sosa*, 2022 Ark. App. 195, at 7, 645 S.W.3d at 31. Once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *Willis*, 2021 Ark. App. 50, 616 S.W.3d 679. We hold that fair-minded persons with the same facts before them could have arrived at the conclusion reached by the Commission, and we affirm its decision. *Id.*

In the conclusion of his argument, Brannigan also contends that the Commission's disposition of the case as denied and dismissed was improper because "all other issues" had been reserved. Here, the additional treatment was denied, and the request to change physicians was moot because it had been agreed to prehearing. Moreover, Brannigan had no permanent impairment and had been released. Therefore, there were no issues left to be resolved.

Affirmed.

VIRDEN and BROWN, JJ., agree.

*Caldwell Law Firm, P.A.*, by: *Andy L. Caldwell*, for appellant.

10

*Charles H. McLemore Jr.*, for appellee.