Cite as 2025 Ark. App. 45

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-24-203

| LINDA MICHAEL | Opinion Delivered January 29, 2025 |
|---|---|
| APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| V. | |
| BOONEVILLE SCHOOL DISTRICT; ARKANSAS SCHOOL BOARDS ASSOCIATION; AND DEATH & PERMANENT TOTAL DISABILITY TRUST FUND | [NO. 206990] |
| | AFFIRMED |
| APPELLEES | |

## STEPHANIE POTTER BARRETT, Judge

Linda Michael appeals the Arkansas Workers' Compensation Commission's opinion finding that she had not established a change in circumstances and that she was not permanently and totally disabled. We affirm the Commission's decision.

Michael sustained an admittedly compensable injury to her back on June 28, 2011, while working for appellee Booneville School District ("Booneville"). In a December 4, 2012 opinion, the Commission affirmed and adopted the ALJ's opinion that Michael had proved by a preponderance of the evidence that a transforaminal lumbar fusion at L4-5, L5-6, and L6-S1; pedicle-screw stabilization; and lateral fusion were reasonable and necessary medical treatments for her compensable injury. Dr. Arthur Johnson performed the fusion surgery in March 2013. In a letter dated April 17, 2014, Dr. Johnson opined that Michael had

reached maximum medical improvement, and he gave her a 14 percent permanent-impairment disability rating to the body as a whole; he also concluded that, on the basis of a functional capacity evaluation (FCE), Michael was able to perform light-duty work, and she could lift one to ten pounds frequently, and eleven to twenty pounds occasionally. It was also determined Michael could stoop, crouch, and kneel infrequently, but she could walk, balance, and push or pull a cart frequently.

On September 2, 2014, the parties entered into an agreed order regarding Michael's then pending claim before the Commission for wage-loss disability benefits, agreeing that Michael was entitled to a 42 percent wage-loss disability benefit above the 14 percent permanent partial-impairment rating that had previously been accepted by Booneville. Paragraph 5 of the agreed order further provided:

> The parties jointly agree that payment as outlined above fully and finally extinguishes any and all claims Claimant may have to wage loss disability benefits associated with the injury she suffered on or about 6/28/11, or at any other time while working for Booneville School District. However, if there is a change in circumstance such to warrant an increase in permanency, Claimant is not barred from seeking permanent total disability benefits.

The order also provided that it would be binding as the law of the case and have the same weight and effect of an opinion rendered after a hearing on the merits.

In October 2017, x-rays indicated that, although Michael's spine was still fused at all three levels, there was a hardware failure in the form of fractured screws at S1. Dr. Johnson removed the fractured screws at L3-S1 in December 2017, although he was doubtful that would relieve Michael's clinical-pain syndrome. On May 29, 2018, Dr. Johnson opined that

Michael had reached maximum medical improvement, and she had an additional 1 percent permanent-impairment rating as a result of the hardware-removal surgery, bringing the permanent impairment to her body as a whole to 15 percent.

As a result of the increase in Michael's permanent-impairment rating from 14 percent to 15 percent, she sought a Commission determination that she was entitled to permanent total-disability (PTD) benefits. The ALJ found Michael permanently and totally disabled, but the Commission, in a unanimous opinion, reversed that decision, finding that Michael had not proved by a preponderance of the credible evidence that she was entitled to PTD benefits.

In appeals involving workers'-compensation claims, this court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence, which is evidence that a reasonable mind might accept as adequate to support a conclusion. *Carrick v. Baptist Health*, 2022 Ark. App. 134, 643 S.W.3d 466. The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission. *Id.* When the Commission denies a claim due to the claimant's failure to meet his or her burden of proof, the substantial-evidence standard of review requires this court to affirm the Commission's decision if the opinion displays a substantial basis for the denial of relief. *Id.* We defer to the Commission on issues involving credibility and the weight of the evidence. *Frost v. City of Rogers*, 2016 Ark. App. 273, 492 S.W.3d 875.

Michael and her husband, Phillip, were the only witnesses at the January 26, 2023 hearing on the issue of PTD benefits. Phillip testified that although his wife stayed at home after her initial injury, she had "got[ten] out more" during that time than she did after the hardware failure. He explained that he "couldn't get her to hardly do nothing" after the hardware failure and that her "limitations just went downhill bad." He said that after the initial injury, Michael would take a bath at least every other day, but now she might take a bath only every six to twelve days. He testified that Michael began falling when the second screw fractured in 2016, and all of her activity decreased after that time.

Michael testified that she goes to the grocery store with her husband about four times a week as well as to the casino three or four times a week for three to five hours, and she also goes to garage sales on occasion. She said that her eight-year-old granddaughter from Texas comes to stay with them, and they have traveled to Texas to visit relatives on four or five occasions, staying several days at a time.

When asked what was worse about her situation now than in 2014, Michael stated that her legs "drew up" more, and her hips, back, feet, and knees bothered her; she said that she sounded like popcorn when she walked. In its opinion, the Commission noted that Michael's medical records from 2017 to the time of the hearing indicated that her chronic pain and related symptoms were being managed at functional levels.

In denying Michael's claim of entitlement to PTD benefits due to the 1 percent permanent-impairment rating increase to her body as a whole after the hardware-removal surgery, the Commission found that Michael did not prove that she had suffered a change

4

in physical condition since the entry of the 2014 agreed order, noting that every condition she alleged to have changed since entry of the 2014 agreed order was known and addressed by the parties in 2014, and the additional 1 percent impairment rating did not justify an award of PTD benefits. Even though the 2014 FCE indicated that Michael was able to perform light-duty work, the Commission noted that, prior to entry of the agreed order, there was "some debate regarding the claimant's ability to work," and this information "played a role in determining the claimant's wage-loss at that time which was agreed to by the parties as evidence by the Order dated September 2, 2014. Since that period, the claimant has failed to prove any change in her physical condition that would warrant a finding of permanent and total disability." The Commission found that all of Michael's complaints resulted from her own self-limiting behavior, noting that while her husband testified that she did almost nothing after the hardware-removal surgery, Michael testified that she was able to go to the grocery store and casinos with her husband multiple times a week, go to garage sales, and travel to Texas several times since the surgery to visit family.

PTD is defined as "inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment," and it is the employee's burden to prove that he or she is unable to earn any meaningful wage in the same or other employment. Ark. Code Ann. § 11-9-519(e) (Repl. 2012). The Commission has the duty to determine disability, taking into consideration the medical evidence and other factors affecting wage loss, such as the claimant's age, education, and work experience; motivation, postinjury income, credibility, demeanor, and other factors are matters to be taken under

5

consideration in claims for wage-loss disability benefits in excess of permanent physical impairment. *Gant v. First Step, Inc.*, 2023 Ark. App. 393, 675 S.W.3d 445. When a claimant has been assigned an anatomical-impairment rating to the body as a whole, the Commission has the authority to increase the disability rating, and it can find a claimant totally and permanently disabled on the basis of wage-loss factors. *Id.* The Commission may modify a compensation award on the ground of a change in physical condition. Ark. Code Ann. § 11-9-713(a)(2) (Repl. 2012). However, aging and the effects of aging on a compensable injury are not to be considered when determining if there has been a change in physical condition or in determining permanent disability. Ark. Code Ann. § 11-9-713(e). When determining physical or anatomical impairment, complaints of pain may not be considered. Ark. Code Ann. § 11-9-102(16)(A)(ii)(a) (Supp. 2023).

Michael argues that the Commission erred in concluding that the additional 1 percent impairment rating did not constitute a change in circumstances sufficient to show a permanent worsening in her condition and that the Commission erred in not finding her totally and permanently disabled. She argues that the Commission ignored that her condition had deteriorated in almost all respects since 2014, and she contends that the agreed order specified that she could seek PTD benefits if there was an increase in permanency, asserting that the agreed-order language indicates that "the parties intended that [she] would be able to rely upon all of the factors which pertained to the extent of her permanent disability" and that "[n]othing in the [agreed] order indicates that if [she] did pursue a claim for permanent and total disability benefits because of an increase in her

6

permanent disability, the Commission could only consider changes subsequent to the order."

Pursuant to the agreed order, Michael was allowed to assert a claim for PTD benefits after the hardware-removal surgery resulted in an additional 1 percent impairment to her body as a whole. However, being allowed to pursue a claim for PTD benefits did not mandate that Michael would be awarded PTD benefits; she still had the burden to prove that she was totally and permanently disabled. The agreed order established that Michael was entitled to a 42 percent award of wage-loss disability benefits in addition to the 14 percent permanent partial-disability rating to her body as a whole; the Commission started with those parameters in making its determination as to whether Michael had proved entitled to PTD benefits as a result of the additional 1 percent permanent-impairment rating to her body as a whole.

Michael contends the Commission ignored that her condition had deteriorated in almost all respects since 2014; however, the Commission was not obligated to believe Michael's or her husband's testimony in this regard. In fact, Michael's testimony indicated that she was able to continue to do many things after the hardware-removal surgery, including going to casinos and traveling to Texas. Although she admitted that she might have suffered from depression before her injury, she asserts that it was manageable at that point but that her mental status had since declined to the point she was suffering hallucinations and delusional thinking, claiming that her mental decline was a result of her

chronic pain. Again, the Commission was not obligated to believe that Michael's mental issues were a result of her compensable injury.

Neither Dr. Johnson nor any other medical professional opined that Michael was totally and permanently disabled as a result of her hardware-removal surgery. Michael's only FCE was in 2014, it showed that she could work in a light-duty capacity, and Dr. Johnson placed no further restrictions on her activities after the surgery. While Michael claims that her vocational limitations had increased since the 2014 FCE, making her permanently and totally disabled, the only evidence to support that assertion came from Michael and her husband. Questions concerning the credibility of witnesses and the weight to be given their testimony are within the exclusive province of the Commission, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Perez v. S. Tire Mart, LLC*, 2024 Ark. App. 623, ___ S.W.3d ___.

The Commission noted that before the agreed order was entered, the evidence indicated that fifteen job leads had been identified for Michael, and there were differing opinions at that time as to why she did not return to work, ranging from "it was difficult to place an individual in the labor market who does not believe she is able to work" to disagreement that any of the possible jobs were viable options for Michael. The Commission further found that the physical and metal limitations Michael claims now make her permanently and totally disabled were all present when the agreed order was entered in 2014, and the additional 1 percent permanent impairment to her body as a whole did not make

8

her totally and permanently disabled. Because the Commission's decision displays a substantial basis for the denial of relief, we affirm.

Affirmed.

HIXSON and MURPHY, JJ., agree.

*Walker Law Group, PLC*, by: *Eddie H. Walker, Jr.*, for appellant.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for separate appellee Booneville School District.